THE CITY OF SAINT PAUL, Plaintiff in Error *vs.* JOS. LAIDLER, Defendant in Error.

That portion of the Ordinances of the City of Saint Paul, "regulating" the sale of fresh meats in said City, which prohibits the sale of meat without a license outside the public market, is in restraint of public trade, and is void.

### STATEMENT OF THE CASE.

This was a prosecution on the part of the City of Saint Paul before O. Simons, Esq., City Justice of said city agaist Joseph Laidler for a breach of Ordinance No. 19, of said City, the following portions of which applicable to this case, are quoted to wit:

"Revised Ordinance, No. 19. An Ordinance regulating the Markets in the City of Saint Paul.

"*The Common Council of the City of Saint Paul, do ordain as follows:*

"SECTION 1. It shall not be lawful for any person or persons to sell or expose for sale any fresh meat, (poultry and venison excepted) in any quantity, at any time, or in any building or street or other place whatever, within the limits of the City of Saint Paul, excepting the stalls of a public market, established and designated by the Common Council, unless such person or persons shall have first obtained a license as hereinafter provided by this ordinance; *Provided,* That nothing herein contained, shall prevent any person or persons from selling or exposing for sale in the streets in the immediate vicinity of such public markets or elsewhere, fresh meat by the carcass or quarter, according to such regulations as the Common Council shall from time to time ordain."

\*     \*     \*     \*     \*     \*

"SEC. 36. The Common Council may license any suitable person or persons to sell fresh meat within the limits of said city, out of the public market, at any particular place to be in said license specified, for a period not longer than one year; *Provided,* That such license shall terminate on the second Tuesday of May next ensuing the time at which it may be

granted, and shall be revocable at the pleasure of the Common Council ; and the amount of such license shall be fixed by the Common Council. Such license shall be in writing, and issued by the Clerk of said City."

*      *      *      *      *      *

" Sec. 43. The present market house leased by the city, situated on lots numbered nine, ten, eleven, twelve, thirteen and fourteen, in block number eleven, in Brazil and Guerrin's addition to Saint Paul in said city, is designated and established as a public market of said city, subject to all the regulations and provisions of this ordinance.

"Sec. 44. This ordinance shall take effect from and after its publication."

See last Digest of Ordinance, etc. page 90.

The power to pass this Ordinance is claimed under the incidental powers of the Charter of the City of Saint Paul, as well as under the following special provisions :

" XVIII. To establish public markets and other public buildings and make rules and regulations for the government of the same ; to appoint suitable officers for overseeing and regulating such markets and to restrain all persons from interrupting or interfering with the due observance of such rules and regulations.

" XIX. To license and regulate butcher stall-shops and stands for the sale of game, poultry, butcher's meat, butter, fish and other provisions."

See present Charter of City of Saint Paul, *Chap*. 4. *Sec*. 3. *Digest, p*. 26.

The City Justice convicted Laidler and fined him $25 and costs, as authorized by the Charter and Ordinance.

All the facts necessary to raise these questions of law, appear of record, and the case comes before the Supreme Court on a writ of Error, sued out by the City of Saint Paul to the Judgment rendered by the District Court.

ARGUMENT AND AUTHORITIES OF PLAINTIFF IN ERROR.

The Ordinance in question is not in restraint of trade, it is a regulation of a particular occupation or branch of business— and though a regulation of trade or branch of business neces-

sarily implies some restraint, a distinction is drawn in the books, between an Ordinance in restraint of trade, and an Ordinance for the regulation of trade. *See Angel and Ames on Corporations, p.* 184.

Thus a by-law prohibiting the sale of fresh meat or making it unlawful to exercise the trade of a butcher, would be in restraint of trade. While a by-law not prohibiting the sale of fresh meat, but requiring it to be sold at a certain place, as a public market, is for the regulation of trade, and not in restraint of it.

"A by-law for the regulation of trade and imposing particular restraints as to time and place is good; but general restraints are bad." 2 *Comyn's Digest,* 284, 290. *Village of Buffalo vs. Webster,* 10 *Wend.* 102.

The present Ordinance does not restrain the right to sell fresh meat, it regulates it. Fresh meat, when retailed, or sold in less quantities than a carcass or quarter, is required to be sold at a particular place, that is, at the public market.

By-laws in restraint of trade were void at common law, but where such by-laws were supported by general custom or acts of Parliament they were held good. *Chamberlain of London vs. Compton* ; 7 *Dowlling & Ryland, p.* 597 ; 16 *Common L. R.* 299 ; *Clark, Esq., Chamberlain of the City of London vs. Le Cren,* 9 *Barn. and Cress, p.* 52 ; 17 *Common L. R.* 330.

*Second.* The Ordinance in question is fully authorized by a special provision of the Charter already quoted, to wit : authorizing the Common Council " to establish public markets " and " make rules and regulations for the government of the same."

The right to establish a Public Market, necessarily implies all the needful and usual powers requisite for the purpose, and the power to make rules and regulations for the same, implies the power to pass all Ordinances which may be enacted relative to a public market, and would therefore embrace the very common regulation of requiring retailers of fresh meat to sell in the public market. "The fixing the place and times at which markets shall be held and kept open, and the prohibition to sell at other places and times, is among the most ordinary regulations of a city or town police, and would naturally be included in the general power to pass laws " relative to the

public markets." "If the Corporation had not the power in question, it is difficult to see what useful purpose could be effected, or what object was intended, by the grant of the power to pass laws "relative to the public markets." "The mere regulation of the building and the stalls of those who might choose to go there, instead of elsewhere, to sell their market provision, would be an idle and useless power, and of no moment towards the good government of the village." Opinion of the Court in the case of *Bush vs. Seabury,* 8 *Johns* 420.

The Ordinance in question, therefore, is authorized by a special grant of power, and the question of its validity, does not rest upon the common law powers of the Corporation.

*Third.* The Ordinance in question is Constitutional and valid.

By an act of the Legislature of the State of New York, the Trustees of the village of Poughkeepsie were empowered, among other things, to pass by-laws "relative to public market"; under this authority a by-law was passed as follows : That from and after the 1st of July, no person or persons should within certain limits, particularly set forth and described, " hawk about any kind of beef, pork, veal, or mutton, or any other kind of meat, by selling the same for the consumption of the inhabitants; and that any person wishing to sell the same for the purpose aforesaid, shall repair to the public market house, and there expose the same for sale," &c., under a penalty, &c.

This by-law was held to be valid. *Bush vs. Seabury,* 8 *Johns,* 418.

So a similar Ordinance of the village of Buffalo was held valid. *Village of Buffalo vs. Webster,* 10 *Wend.* 100.

These authorities appear to be directly in point.

The regulations of the sale of fresh meat by retail is so common, that it is unnecessary to cite the numerous precedents that might be adduced from other cities; and the nature and character of such regulations must depend upon the views of policy of the municipal authorities, who, it is presumed, will establish such regulations, in this respect, as will best subserve the wants and convenience of the community they represent.

It has been considered, in most cities, highly desirable to es-

tablish a public market, which might be conducted and supervised under the eye of the public authorities; so that on the one hand, the public might be protected from abuse, imposition or nuisance, which might be incident to this business, and on the other hand, by collecting those engaged in the trade together, there would be more competition, and the public would have greater facilities in obtaining these important articles of provision. Such reasons have undoubtedly actuated the Common Council, in this instance, in establishing the present Public Market of the City, which has been sustained and kept open, nearly from the commencement of our City Government to the present time.

*Fourth.* The refusal to grant a license to Joseph Laidler, could not excuse him for violating the Ordinance.

It will be observed that the Common Council have both power to establish markets, and also to license persons selling fresh meat. The Council are not obliged to exercise both powers. They might have found it inexpedient to establish a public Market, and have regulated the sale of fresh meat by licenses; or they might have found it inexpedient to license, and established a public market requiring the sales of fresh meat to be made there, as they have done.

The exercise of either power is authorized by the Charter, and it no where appears that the Council are obligated to exercise this licensed power; in fact, it will be seen that an unlimited exercise of this license power would frustrate the object of the Council in establishing the public market, the design of which was to bring the butchers together to that place.

Section 36 does not establish any standing rule by which all applicants may obtain a license, but leaves the exercise of the power discretionary with the Council; the object of this section has already been explained.

The Council might therefore refuse to grant any licenses without violating this Ordinance or the Charter.

But suppose that Mr. Laidler, under the Ordinance or Charter, was entitled to a license upon his application, and the Council refused to grant it.

It cannot be seen how this would render a valid Ordinance

a nullity, and how such refusal would give Mr. Laidler an immunity from the Ordinance.

If the Council had no discretion to refuse the license, Mr. Laidler could have compelled that body to perform its duty in granting the license; the action of the Council could not justify him in violating a positive law or Ordinance.

Such a position would lead to absurd consequences.

For a refusal of the Council to grant a license, under such circumstances, would be in fact giving the applicant an immunity fo violate the Ordinance ever after.

Points and authorities presented by Counsel for Defendant in Error:

The Defendant committed no offence by selling fresh meat without a license, because—

*First.* The provisions of the ordinance under and by virtue of which Defendant was prosecuted, are illegal and void.

*Second.* The action of the Common Council in refusing the Defendant a license, was unauthorized, illegal and void.

*Third.* Assuming the provisions of the ordinance referred to, to be entirely legal, the Defendant committed no offence by selling fresh meat without a license, after having duly applied for such license and the same having been refused.

*Fourth.* The Act of the Legislature entitled "An Act to reduce the law incorporating the City of St. Paul, in the County of Ramsey, and State of Minnesota, and the several acts amendatory thereof into one act, and to amend the same," approved March 20th, 1858, is unconstitutional and void.

1. The provisions of the ordinance under which the Defendant was prosecuted and fined, are illegal and void, because they are in restraint of trade, and are unauthorized by the Charter of the City of St. Paul.

The provisions of the ordinance in question, which it is material to consider, are sections 1, 2, 3, 4, 5, 6, 8, and 36 of ordinance No. 19, of the Revised Ordinances of the City of St. Paul.

The provisions of the City Charter, by virtue of which this ordinance professes to be framed, are paragraphs "Eighteen"

and "Nineteen" of Section 3, Chapter 4 of Act No. 63, approved March 20, 1858, viz:

"XVIII. To establish public markets and other public buildings, and make rules and regulations for the government of the same; to appoint suitable officers for overseeing and regulating such markets, and to restrain all persons from interrupting or interfering with the due observance of such rules and regulations.

"XIX. To license and regulate butcher stall-shops and stands for the sale of game, poultry, butcher's meat, butter, fish and other provisions."

1. The legislative powers of a corporation must be exercised *reasonably and in sound discretion, and strictly within the limits of the Charter, and in perfect subordination to the Constitution and general laws of the land and the* RIGHTS DEPENDENT THEREON. 2 *Kent*, 296; *Angell and Ames on Corporations, chap.* 10, *sec.* 3, *p.* 330.

2. The legislative powers of a corporation are not only restricted by the constitutional and statute law of the State in which they are established, but *by the general principles and policy of the common law, as it is there accepted.*

*Angel and Ames, pp.* 331–3, and authorities there cited.

3. Whenever a by-law of a corporation seeks to alter a well-settled and fundamental principle of the common law, or to establish a rule interfering with the rights or endangering the security of individuals or the public, a statute, or other special authority emanating from the creating power, must be shown to legalize it. *Angell and Ames, ibid.*

4. *Trade* is free by common law. By common law, any person may carry on any trade in any place, unless there be a custom to the contrary. A municipal ordinance, therefore, which is in restraint of trade, is void, unless supported by a direct grant of authority from the Supreme Legislature, or by a special prescriptive custom, which is equivalent to such grant. *Angell and Ames, pp.* 332–3, and authorities there cited; *Clark, Esq. Chamberlain of the City of London vs. Le Cren,* 9 *Barnwell and Creswell,* 52–8; 17 *Com. Law R.* 33; *Harrison &c. vs. Godman,* 1 *Burr,* 12; *Chamberlain of London vs. Compton,* 7 *Dawling and Ryland,* 601; *The King vs.*

*Cooper's Co.*, 7 *Dunford and East*, 543; *Dunham vs. Trustees of Rochester*, 5 *Cowen* (*N. Y.*) 462; *Freeholders vs. Barber*, 2 *Halst.* (*N. J.*) 64; *Village of Buffalo vs. Webster*, 10 *Wend.* *p.* 100.

Of course, none of the corporate powers of St. Paul are supported by special customs; nor is this pretended. If it has the power to pass a by-law in restraint of trade, it derives this power by direct legislative grant.

5. When a municipal by-law is in restraint of trade, the custom or legislative grant which supports and authorizes it must be strictly proved; and there must be no material variance between the authority and the by-law. In other words, the authority of a municipal corporation in this State to pass a by-law or ordinance in restraint of trade, cannot be *intended*, but must be clearly shown, to come within the terms and intention of a grant from the Supreme Legislative power. *Angell and Ames*, *p.* 333, and authorities cited; 5 *Cowen*, 465.

6. A by law may be so oppressive that even a special custom will not support it. *Angell and Ames*, *p.* 333, and authorities cited.

7. The scope, extent and nature of the legislative powers of a corporation are indicated by the purposes and objects for which it has been created.

The object of municipal corporations is the better preservation of good order and government in particular localities where masses of men are congregated. That is to say, the governmental and legislative powers of a municipal corporation are wholly those of police. Their nature and use are wholly and strictly *beneficial*. Their sole and exclusive design is to *aid* and *facilitate* men when living in aggregated masses, in their lawful intercourse, business and commerce. To this end, they are to be exerted to preserve peace and good order, and so to regulate the business and intercourse of men—when any regulations shall be necessary for this purpose—as will best advance and promote this business and intercourse, and the interests of men thus aggregated together.

Whenever, therefore, these powers are so employed as to hinder, delay, embarrass, restrain, burthen or repress the business and intercourse of men, or to impair their interests, the

municipal corporation thus acting, has palpably transcended its jurisdiction, and consequently its action is wholly void. It is doubtless the province of a police government to regulate, when necessary for the general interests, and not otherwise, and to a reasonable extent, the *manner* or *form* in which men shall exercise their rights; but it has no power to restrain or embarrass, directly or indirectly, the free exercise of these rights, or to impair in the least degree the rights themselves. Chancellor Kent says, not only that the legislative powers of a corporation must be exercised reasonably and in sound discretion, and strictly within the limits of its charter, and in perfect subordination to the Constitution and general laws of the land, but also that they must be exercised *in perfect subordination to the rights dependent on the Constitution and laws.* (2 *Kent.* 296.)

A municipal corporation is a mere creature of the law, created for certain specified purposes, of inferior jurisdiction, and hence its powers and jurisdiction can never be *intended.*

A municipal corporation may *prohibit* nuisances and the obstruction of the streets and public ways and places, and may *restrain* the disposition of gun-powder and other dangerous articles to the extent demanded by the public health, tranquility and safety. It may *regulate trade*, but only in the manner and to the extent necessary for the proper and better protection and facilitating of trade, and the general interests therein.

*Eighth.* An examination of the Charter of the City of Saint Paul will show that the grant of legislative powers thereby conferred is strictly in conformity with the above views and principles. Chapter 4, Section 3.

The Common Council is authorized generally to make ordinances, rules and by-laws, "for the government and good order of the City, for the suppression of vice and intemperance, and for the prevention of crime; and then follows a special and detailed enumeration of its powers for these purposes. The only provisions affecting, or which it is pretended affect, the question under consideration, are the "Eighteenth" and "Nineteeth" subdivisions of Section 3, quoted at length above. These provisions only confer the ordinary police powers of "regulating" the matters under consideration. It has already

been sufficiently shown that the power to license and regulate trade does not imply the authority to prohibit or restrain it. The rule of construction is strict. Nothing can be *intended*. By common law trade is *free* and *any* person may carry on *any* trade in *any* place. The intention of the Legislature, therefore, to innovate upon this time-honored and wholesome principle of the common law, must clearly appear, and cannot be presumed or intended; and when such intention does clearly appear, the provision thus innovating upon the common law must receive a strict construction. The principle that trade is free, and that any person may carry on any trade in any place, being a principle of the common law—must be accepted as the law of this State, unless its repeal or modification be clearly shown. Now so far from its being the intention of the law maker, in the provisions of the Charter referred to, to innovate upon this wholesome and vital maxim of the common law, the very language and terms which are employed, and employed evidently, *ex industria*, in enumerating the several legislative powers of the City, show conclusively the intention to have been to leave intact and in full force and effect, this principle; and that these powers were to be exercised in strict subordination thereto.

*Ninth.* It must therefore be assumed, and indeed it seems to be considered by the learned counsel for the Plaintiff in error, that an ordinance or by-law of the City of Saint Paul, or any provisions thereof, which are in restraint of trade, are void. Whether the provisions of an ordinance are in restraint of trade; whether they are strictly within the limits of the Charter and in perfect subordination to the laws of the land and the rights of individuals founded thereon; whether they are *reasonable*, *just* and *necessary*, and made in *sound discretion;* are questions for the judiciary to determine—matters which it is the province and duty of the judiciary to review and decide.

*Tenth.* The provisions of the ordinance in question are clearly in restraint of trade, because—

1. They specify and limit the place where, and the time during which a trade may be carried on, and prohibit the exercise of the trade elsewhere, or at other times than those speci-

fied and limited for the same, unless at the pleasure of the Common Council.

2. They directly impose a heavy charge and restraint upon the carrying on of a trade, viz: the business of vending fresh meat, by compelling all persons engaged in the same, to enter into a contract of lease with the City, and to pay a large rent therefor.

3. They directly confine and restrict the business of vending fresh meat to the stalls which the City may see fit to provide therefor in the public market, and to the persons occupying those stalls, thereby effectually establishing a complete monopoly in an important branch of trade, viz: the retailing of fresh meat. By operation of this ordinance the City of St. Paul does actually fix the number of persons who may retail fresh meat within its limits, and fixes it too at its pleasure.

4. These provisions place the exercise of an important branch of trade, and those who shall engage therein, entirely at the pleasure and caprice of a City corporation.

Thus, then, does the case stand: The City of St. Paul in effect declares—FIRST, That no person shall sell fresh meat, unless at the public market. SECOND, That no person shall sell fresh meat at the public market, unless in one of the stalls thereof. THIRD, That no person shall sell fresh meat in one of the stalls thereof, unless he shall first hire the same and pay or secure the payment of the rent therefor. The number of stalls must in the nature of things be limited; and practically, this limit is at the pleasure or caprice of the City authorities. Thus, therefore, is a complete monopoly of the retailing of fresh meat established within the limits of the City of St. Paul, and vested in certain persons, the number of whom is defined by the City itself, and at its own will and pleasure.

*Eleventh.* The provisions in question are not only in restraint of trade, but they are in every aspect of the matter, *unreasonable, inequitable* and *unnecessary.* They palpably transcend the limits of the legislative powers granted by the City Charter; transgress the spirit and principles of the Constitution and Common Law, and invade important private *rights.*

II. The action of the Common Council in refusing the De-

fendant a license, was illegal and void, for the reasons above assigned for the illegality of the provisions of the ordinance itself. This action of the Common Council was in reality but the carrying into effect of those provisions of the ordinance.

III.   Assuming the provisions of the ordinance in question to be valid, the Defendant committed no offence by selling fresh meat without a license, after having duly applied for such license, and the same having been refused.   The Common Council were authorized even by the terms of the ordinance itself to grant the Defendant the license applied for.   They had, therefore, no right, ARBITRARILY and WITHOUT GOOD AND SUFFICIENT CAUSE, to refuse such license.

They having, however, refused the Defendant a license when applied for, without any cause whatever appearing for such refusal, he was not thereafter in fault by selling without a license.

IV.   The Act entitled "An Act to reduce the law incorporating the City of St. Paul, in the County of Ramsey, and State of Minnesota, and the several Acts amendatory thereof, into one Act, and to amend the same," approved March 20th, 1858, (the present City Charter) is unconstitutional and void, as being in violation of Sec. 27, of Article 4th, of the Constitution of Minnesota, which declares "No law shall embrace more than one object, which shall be expressed in its title."

The Act in question not only creates a municipal corporation, but also establishes an important branch of the *judiciary* —a *court* for the *trial* of causes, both civil and criminal, and with power to try and determine finally certain causes.

H. J. HORN, Counsel for Plaintiff in Error.

LORENZO ALLIS, Counsel for Defendant in Error.

*By the Court.*—ATWATER, J.   The Defendant in Error, was convicted before the City Justice of the City of Saint Paul, of the violation of the following Ordinance of said city viz:

"It shall not be lawful for any person or persons to sell or expose for sale fresh meat, (poultry and venison excepted) in any quantity at any time or in any building or street or other place whatever within the limits of the City of Saint Paul ex-

cepting in the stalls of a Public market established and designated by the Common Council, unless such person or persons shall have first obtained a license as hereinafter provided by this Ordinance : Provided that nothing herein contained shall prevent any person or persons from selling or exposing for sale in the streets in the immediate vicinity of such public markets or elsewhere fresh meat by the carcass or quarter, according to such regulations as the Common Council shall from time to time ordain."

The Defendant appealed from the judgment entered against him to the District Court of Ramsey counyt where the judgment was reversed. The Plaintiff below brings the case to this Court by writ of Error.

In considering the important question presented by the case, it will be necessary to refer to one or two other sections in the same Ordinance as that above referred to. Section three provides "That the Common Council shall, from year to year, determine the minimum rents of all of the stalls in the public markets of the city, and it shall be the duty of the Market Master to offer for sale at public auction, to the highest bidder all such stalls, at such time and place as the common council shall designate ; but no stall shall be rented for a less sum than the minimum rents determiued as aforesaid."

Sec. 4. "When any person shall rent a stall in the public market house, he shall pay to the Market Master one fourth of the annual rent in advance and shall give security satisfactory to the committee on markets for the remainder thereof, to be paid in three instalments and on the commencement of each quarter of the year next ensuing."

Sec. 5. "It shall be the duty of the City Clerk to keep a record of the number of stalls so leased, and the names of the lessee; and it shall be the duty of all persons transferring leases to stalls to notify the City Clerk, who shall upon the production of a receipt from the Market Master of the sum of two dollars, transfer the same as desired; and no stall shall be used or occupied by any one except the lessee, until after the payment to the Market Master of the sum of ten dollars, and the transfer of the lease."

Sec. 36. "The Common Council may license any suitable

The City of St. Paul *v.* Laidler.

person or persons to sell fresh meat within the limits of said city, out of the public market at any particular place to be in said license specified for a period not longer than one year. Provided that such license shall terminate on the second Tuesday of May next ensuing the time at which it may be granted; and shall be revocable at the pleasure of the common council; and the amount of such license shall be fixed by the common council."

SEC. 43. Provides that the present market house leased by the city shall be established as a public market of said city, subject to all the regulations and provisions of this Ordinance.

These are all the provisions of the Ordinance that seem to have a bearing upon the question presented for the consideration of this Court. The power to pass the Ordinance containing these provisions is claimed particularly under Sec's 18 and 19, "To establish a public market and other public buildings and make rules and regulations for the government of the same; to appoint suitable officers for overseeing and regulating such markets, and to restrain all persons from interrupting or interfering with the due observance of such rules and regulations."

SEC. 19. "To license and regulate butcher stall shops and stands for the sale of game, poultry, butcher's meat, butter, fish and other provisions."

The chief point for consideration in the case is, whether the Ordinance under which the Defendant below was convicted is one in restraint of trade. If so; it seems to be conceded by the counsel for both parties that it is unauthorized and void.

The City of Saint Paul is a municipal corporation, organized and established to accomplish certain purposes and objects particularly specified in its charter. The city government derives its power and authority to make and enforce laws for the government of the city solely from the legislature. It is entirely a creature of the Statute and in the exercise of its authority cannot exceed the limits therein prescribed. It is a body of special and limited jurisdiction; its power cannot be extendr ed by intendment or implication, but must be confined within the express grant of the legislature. Especially is this the case in the exercise of its legislative authority, or the power of making ordinances or laws for the government of the city; and

not only so, but this power must be exercised reasonably and in sound discretion, and strictly within the limits of the Charter, and in perfect subordination to the Constitution and general laws of the land, and the rights dependent thereon, (2 *Kent.* 296,) and where the Charter enables a company or corporation to make by-laws (or ordinances) in certain cases and for certain purposes, its power of legislation is limited to the cases and objects specified ; all others being excluded by implication. (*Angell and Ames on Corp. p.* 352.)

Incidental to the ordinary powers of a public municipal corporation, and necessary to the proper exercise of its functions is the power of enacting sanitary regulations for the preservation of the lives and health of those residing within its corporate limits. And it may reasonably be inferred, that Section nineteen of the Charter of the City of Saint Paul, was framed to give the corporation authority to make such regulations and with this object only. And so far as it conforms to this object, and assumes to exercise no power further than may be necessary to attain it, the Ordinance should be held valid. But if it goes beyond or outside of this purpose—if it embraces within its scope attainments of objects inconsistent with the manifest intention of the legislature in making the grant of power, and which restrain and limit the rights which citizens before enjoyed, neither upon reason or authority can it be sustained, but must be held void.

It seems to be conceded that under the section of the Charter above quoted, and by authority of which the City Council claimed to have passed the Ordinance in question, the right to restrain trade is not conferred in terms. And for reasons above stated if such power is not strictly conferred, it cannot be claimed by intendment or implication. But the argument of the counsel for the Plaintiff in Error has been mainly directed to show that the Ordinance under which the Defendant in Error was convicted was not in restraint of trade, but only for its regulation and therefore authorized by the Charter.

Upon a careful examination of the provisions of the Ordinance we are satisfied that the Common Council have exceeded their authority in its enactment and have attempted to exercise a power not vested in them by the legislature. There

are many cases where it seems very difficult to draw the distinction between laws which only regulate, and those which restrain trade. But we have yet to find a single authority which holds that a law or ordinance containing the limitations and restrictions which abound in the one under consideration, has not been held in restraint of trade. These restrictions are numerous, unnecessary, and some of them unreasonable and oppressive to those who wish to exercise the trade which the Ordinance pretends to "regulate."

It will be observed by a reference to the Ordinance, that it provides that no person shall sell fresh meat (by retail or less than a carcass or quarter) except in the stalls of a public market, without a license. It provides that the Common Council shall fix the rates for such stalls and that no person shall occupy such stalls without paying *the rates fixed by the Council*, or such higher rates as they shall bring at auction. It provides that one quarter's rent shall be paid in advance, and security given for the balance, also to be paid quarterly in advance. It provides that no lease shall be transferred except upon the payment of the sum of ten dollars, and that no stall shall be occupied by other than the original lessee, without such transfer and payment. It provides that the Common Council may license any suitable person or persons to sell meat within the City limits, upon paying the amount of such license as fixed by the Common Council.

It is difficult to perceive on what principle these onorous restrictions can be maintained. Not certainly on the ground of necessity, as mere sanitary regulations. For the ordinance gives to the City a complete monopoly of the business which it purports to regulate. For it declares in effect that no person shall sell fresh meat unless in one of the stalls of the public market; and that no person shall sell fresh meat in one of the stalls thereof, unless he shall first hire the same, and pay or secure the payment of the rent therefor. No provision is made that the City shall provide sufficient stalls for all applicants, and from the nature of the case the number of the stalls must be limited. The Council may charge one or five thousand dollars for such stalls, payment of which may be compelled, or the entire sale of meat (by retail) be prohibited. It is

no answer to this to say that it is not probable that such a course would be pursued by the City authorities. The difficulty is, that the ordinance gives them the right to do it; that by virtue of it such power is claimed by the Common Council. Nor is the difficulty obviated by section thirty-six, providing that the Common Council may license any suitable person to sell fresh meat within the City. For the section leaves it in their discretion whether to do this or not, and also leaves it in their discretion whether the person be *suitable* or not. Nor as the ordinance is framed, is there any court or tribunal that can review the exercise of that discretion. Permission to sell might be granted only to political partizans, or personal friends, and there could be no redress for such an exercise of power. No general rule has been adopted which shall apply equally to all upon complying with such conditions as may be prescribed. And thus the Common Council have assumed the right to restrain every person they choose from engaging in a trade which by common law is free to all. And instead of confining themselves in the exercise of the power to regulate the trade of butchers, to the precise object for which the grant of power was made by the Legislature, they have practically exercised it for the purpose of raising a revenue for the City. For the counsel for the Plaintiff in error in his argument, admits that the reason of the Common Council in refusing the Defendant a license to sell outside the market on his application therefor, was to require the party to rent a stall. Or to use his own language, "it will be seen that an unlimited exercise of this license power would frustrate the object of the Common Council in establishing the public market; the design of which was to bring the butchers together at that place."

The authorities cited by the Plaintiff in error, do not sustain his position to the extent claimed by them. The case of *Bush vs. Seabury*, 8 *Johns.* 418, was a ruling upon a by-law essentially different from the one under consideration.

That provided that after the first of July no person, &c., should hawk about any beef, pork, veal, mutton, or any other kind of meat, by selling the same for the consumption of the inhabitants, and that any person wishing to sell the same for

the purpose aforesaid, shall repair to the public market house, and there expose the same for sale," &c.

The only restriction here seems to be as to *time* and *place;* and it does not appear that any charge was made for selling at the public market, much less that only suitable persons (in the discretion of the town authorities) were permitted to sell meat in the market. It would appear that every person who chose could there expose meat for sale, free of any charge from the town for the privilege. This view is strengthened by the case of *The Village of Buffalo vs. Webster*, 10 *Wend.* 100, also cited by the Counsel for the Plaintiff in Error. In that case the defendant was convicted under a by-law of the corporation, by which it was ordained, that it should not be lawful for any person within the limits of the corporation, during certain months, to hawk about or sell by retail any kind of fresh beef, lamb or mutton, for the consumption of the inhabitants of the village, *except at the public market or within certain limits around the same.* And Savage, Chief Justice, in giving the Opinion, says :—" At common law, corporations have power to make by-laws for the general good of the corporation. They must be reasonable, and for the common benefit; they must not be in restraint of trade, nor impose a burden without an apparent benefit. A by-law for the regulation of trade, imposing particular restraints as to time and place, is good; but general restraints are bad. Laws relating to the public market must necessarily embrace the power to require all meats to be sold there—*not that every man who sells meat shall hire a stall. Nor is there any such objection to the present law. Any one may sell in the streets adjacent to the market.*"

Here it will be seen that the by-law or ordinance sustained in that case was not only entirely free from some of the most serious objections to the one under consideration, but the inference is almost conclusive, from the language of the Court, that, had they existed, the law would have been declared void. Nor does the case of *Clark vs. Le Cren*, 9 *Barn. and Cress., p.* 5219, *Com. L. R.* 33, furnish any authority for sustaining an ordinance such as this under which the defendant was convicted. That was an action of debt brought in the Lord Mayor's Court to recover from the defendant a penalty of £5 for having

used and exercised the trade of a painter within the City of London, he (the defendant) not being free of the Painters' Company; and in that case it was urged that the by-law was only in regulation, and not restraint, of trade. But it was held otherwise—the Court declaring that, "by common law, any person may carry on any trade in any place unless there be a custom to the contrary; if there be no such custom, a by-law in restraint of trade will be bad. The return to the Habeas Corpus in this case sets out a custom for the Common Council to make by-laws for the regulation of trade; but the effect of the by-laws in question is, to prevent persons from carrying on trade. It operates, therefore, not merely to regulate but to restrain trade."

This reasoning, we think, applies with still greater force to the case at bar: for it may be reasonably inferred that every person might be made free of the Painters' Company, and therefore exercise the trade, in taking the proper steps; whereas, in this case, there is no obligation on the Common Council to provide sufficient stalls in the public market for all applicants, and they have reserved to themselves the right to say whether any, and, if so, what person shall be licensed outside the markets, and, at what price. Equally with the case above cited would this ordinance seem to be, not only one regulating but restraining trade. The same doctrine is held in *Harrison vs. Godman*, 1 *Burr*, 12; *and Clark vs. Compton*, 7 *D. and R.* 597; *and in Rex vs. Harrison*, 3 *Burr*, 1322, the by-law in the last named case being held good on the ground of a special custom to warrant it. In all these cases the by-law seems to have been held bad, except when supported by special custom; not on the ground that it was an absolute prohibition from engaging in trade, but because imposing restrictions upon the exercise and enjoyment of a right which by the common law was free to every one without any restraint. And one of the most important of these restrictions seems to have been the additional expense involved in the exercise of the trade in question; for in the case of *Rex vs. Harrison*, this was one of the arguments used by counsel against the validity of the law, and the force of which seems to have been admitted, by implication, by the opposing counsel, as he avoids it, by stating

that not only was no additional expense imposed, but that there were express provisions against it. In the case at bar, not only is there additional expense imposed upon those who would exercise the trade of a butcher, in compelling them to hire a stall in a public market, but this expense is entirely within the discretion of the Common Council, without the power of revision by any court, however arbitrarily or unreasonably it may be exercised; for the Common Council have the power of preventing the sale of meat in St. Paul unless upon payment of such rent as they shall demand. It is difficult to see how such an ordinance can operate for the common benefit, or the benfit of any one save the corporation: for, its legitimate effect must be, to increase the price of the commodity sold in proportion to the restrictions imposed upon those engaged in the trade—in other words, in proportion to the rent demanded for stalls and the refusal of the Common Council to license outside the market; and, consequently, the ordinance must operate not only to the prejudice of the butchers but also to that of the citizens in general. On the whole, therefore, we are satisfied that the ordinance in question is not merely in regulation but also in restraint of trade, and that it is unreasonable, unnecessary and inequitable, and cannot be sustained upon principle or authority. And, while the right is conceded to municipal corporations to adopt such regulations as may be necessary and reasonable, to protect the lives, health, property or morals of its citizens, the exercise of this right should be carefully guarded, and limited within the clear intent of the grant of power for such purpose; and, where a question arises as to any particular ordinance which it is claimed interferes with the rights of individuals as enjoyed under the common law or by statute, the burden of proof should be on the corporation to show that it has not exceeded its authority in framing such ordinance.

In the case at bar, we think the Common Council has exceeded its authority in enacting the ordinance under which the Defendant was convicted, and that it is, therefore, void as to such part as prohibits the sale of meat without a license outside the market, and that the judgment of the District Court should be affirmed.

Justice FLANDRAU dissents from the decision of the Court.