### WILLIAM W. WALTER v. BOWLING GREEN.

1. MUNICIPAL ORDINANCE PROHIBITING TRANSPORATION OF EXPLOSIVES THROUGH STREET NOT INCONSISTENT WITH LAN. R. L. 10622 (R. S. 6953).

A municipality has power under the statutes of this state, not only to regulate, but to prohibit absolutely the transportaion of nitroglycerine through its streets; and an ordinance prohibiting the same is not inconsistent with the provisions of Lan. R. L. 10622 (R. S. 6953).

2. A FINE OF $100 FOR VIOLATION OF SUCH ORDINANCE NOT UNREASONABLE.

An ordinance prohibiting the storage of nitroglycerine within the corporate limits of a municipality or its transportation through the streets thereof, and imposing a fine of $100 for the first violation thereof, is not unreasonable, nor is the fine excessive.

3. HEARSAY.

Information acquired by a police officer from a third person as to the amount of nitroglycerine transported over a certain street by defendant, etc., in violation of a municipal ordinance, is inadmissible in evidence under the hearsay rule.

ERROR to Wood common pleas court.

Beverstock & Donahey, for plaintiff in error:

A municipality does not have the authority or power to absolutely prohibit the storing or transportation of nitroglycerine; their power is limited to regulating the transportation of the same, and fixing the quantities which may be transported or stored. Section 1692 Rev. Stat. (repealed 96 O. L. 96); Lan. R. L. 10622 (R. S. 6953); Hays v. St. Marys (Vil.), 55 Ohio St. 197, 198 [44 N. E. Rep. 924].

The legislature, at the time of the passage of the ordinance in question, had not conferred upon municipalities the power to impose a fine or imprisonment for the violation of Sec. 1692 Rev. Stat. (repealed 96 O. L. 96); Whitcomb v. Springfield, 2 Circ. Dec. 138 (3 R. 244); Knoxville (City) v. Railway, 83 Iowa 636 [50 N. W. Rep. 61; 32 Am. St. Rep. 321]; Nevada v. Hutchins, 59 Iowa 506 [13 N. W. Rep. 634]; State v. Bright, 38 La. Ann. 1 [58 Am. Rep. 155]; St. Paul v. Laidler, 2 Minn. 190 [72 Am. Dec. 89 and note]; 96 O. L. 21; Alliance v. Joyce, 49 Ohio St. 7 [30 N. E. Rep. 270]; Sigler v. Cleveland, 4 Dec. 166 (3 N. P. 119); Canton v. Nist, 9 Ohio St. 439; Thompson v. Mt. Vernon, 11 Ohio St. 688.

P. J. Chase, city solicitor, for defendant in error.

**PARKER, J.**  (Orally.)

In this case an affidavit was filed with the mayor of the city of. Bowling Green, Ohio, charging the plaintiff in error, William W. Walters. with violating a certain ordinance which prohibited the conveyance of nitroglycerine through the city. Various proceedings were had attack- ing the affidavits, etc., that we need not give attention to. The matter finally came to a point where the plaintiff in error entered a plea of not guilty, the evidence of certain witnesses was adduced, and he was con- victed and sentenced to pay a fine of $100 and stand committed to the workhouse at Toledo until the fine and costs were paid. He prosecuted error to that judgment in the court of common pleas, the judgment was there affirmed, and he now prosecutes error to this court. He contends that the conviction is wrong, and the proceedings erroneous for various reasons:

First, because the ordinance is invalid, it being prohibitive; his contention being that the council was without authority to pass a pro- hibitive ordinance upon this subject; that it only had authority to regulate; second, that the penalty is excessive and unauthorized; third, that the conviction is against the law because it is not supported by competent evidence; and fourth that the proceedings were erroneous because the court admitted certain hearsay evidence over his objection, and subsequently refused to rule it out, but considered it; that this evi- dence was important and its admission and rejection was prejudicial to the plaintiff in error.

We will discuss these questions in the order we have mentioned them.

Is the ordinance invalid for the reasons stated? It is pointed out to us that Lan. R. L. 10622 (R. S. 6953) provides as follows:

"It shall be unlawful for any person, firm or corporation, to manu- facture the substance or material known as nitroglycerine, or any com- pound thereof, or to store the same in quantities exceeding one hundred pounds, within the limits of any municipal corporation, or within eighty rods of any occupied dwelling or public building, or without giving bond as hereinafter provided to pay any damages caused by the explosion of said substance. Within thirty days after the passage of this act, any and all persons, firms or corporations heretofore engaged in the manu- facture or storage  *  *  *,  shall give bond in the sum of $5,000, with good and sufficient surety, to the county commissioners of such county with such surety or sureties as shall be approved by such county commissioners, conditioned for the payment of all damages that may be caused to persons or property by any explosion of any of said substance.

And it shall be unlawful for any person, firm or corporation to transport or carry said substance in any package not having written or printed upon two sides thereof, in plain and distinct letters, the words 'nitroglycerine—dangerous,' or in any vehicle or water craft upon which any passenger is, at the same time being conveyed, or in any vehicle upon the two sides and rear end of which there shall not have been printed, in plain distinct letters, large enough to occupy a space two inches wide by eighteen inches long, the words 'nitroglycerine—dangerous.' And anyone convicted of a violation of this section, either as principle or servant, agent or officer of such person, firm or corporation, shall be fined not more than $1,000, or imprisoned not more than three months, or both.''

Now it is urged that because this is not a prohibition but a regulation of the uses of nitroglycerine, its manufacture, storage, transportation, etc., an ordinance of a municipality going further, going beyond this, is obnoxious to it and in conflict with it, and therefore invalid. This argument proceeds upon the theory that since one is not prohibited by this statute from storing nitroglycerine within the limits of a municipality so long as the quantity stored does not at any time exceed a hundred pounds, that therefore the statute is permissive to that extent, and is a limitation of the authority of the municipality. We do not agree with this contention; we do not think it is intended to be so.

I shall, before closing, call attention to some remarks upon these provisions of Lan. R. L. 10622 (R. S. 6953) by our Supreme Court. But proceeding further, counsel contend that there is no express authority to municipalities to prohibit the storage in or transportation through a municipality, of any nitroglycerine, that is to say, of nitroglycerine of any quantity whatever. Counsel for the state relies upon the authority given by subdivisions three and fourteen of Sec. 1692 Rev. Stat. (repealed 96 O. L. 96.) That section contains an enumeration of the principal powers of municipalities, and among other powers the village council is given authority to provide by ordinance, ''to prevent injury or annoyance from anything dangerous, offensive or unwholesome, and to cause any nuisance to be abated;'' and ''to regulate the transportation and keeping of gunpowder and other explosive and dangerous combustibles, and to provide for license magazines for the same.'' It will be observed that paragraph fourteen explicitly mentions ''explosives'' and that the authority given by that paragraph is not to prohibit the transportation or keeping of explosives, but to regulate the same.

It is conceded on behalf of the city that under that paragraph standing alone, this ordinance which is prohibitory could not be sustained, and on the part of the plaintiff in error it is contended that paragraph three is not intended to cover the subject-matter specifically covered by paragraph fourteen, and, further, that the only lawful method for the enforcement of paragraph three, is by appropriate proceedings to abate the nuisance which by that paragraph the council has a right to prevent or cause to be abated.

We are cited to the case of State v. Bright, 38 La. Ann. 1 [58 Am. Rep. 155], and St. Paul v. Laidler, 2 Minn. 190 [72 Am. Dec. 89], in support of the proposition that a municipality has only such powers as are expressly given to it by statute, or, as is said in some states, where the general statute does not constitute their charter, such powers as are expressly given to them by the terms of their charters, and there can be no question but that is the rule, and unless we can find express authority for enforcing the provisions of paragraph three of Sec. 1692 Rev. Stat. by an ordinance imposing a penalty, then these proceedings would be unauthorized, and this conviction cannot stand.

We are also cited to the case of Knoxville (City) v. Railway, 83 Iowa 636 [50 N. W. Rep. 61; 32 Am. St. Rep. 321]. In that case it was held, reading from the syllabus:

"A municipal corporation has no authority to provide by ordinance for the punishment by a fine of a person guilty of a nuisance as defined by the ordinance. The power of the city is limited to provide for the abatement of the nuisance."

It appears upon looking into the case that the authority of the municipality in the premises is found in Sec. 456 of the code of that state which reads, "they shall have power to prevent injury or annoyance from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated;" reading, it will be observed precisely as does this paragraph three of Sec. 1692 Rev. Stat. (repealed 96 O. L. 96), with the exception that in our statute the word "unwholesome" is used, where in the Iowa statute the word "unhealthy" is used. Now so far as appears from this report, the only authority so far as preventive measures or penalties, or method of procedure is concerned in the state of Iowa, was to be found in this paragraph of the statute which I have read, and in the course of the opinion it is said:

"Cities and incorporated towns have power to provide, by ordinance, for the abatement of nuisances, but not for the punishment, by fine, of those guilty of maintaining the nuisances."

May that be said with reference to municipalities in the state of Ohio? We think not. We think there is no such limitation. Section 1861 Rev. Stat. (and for convenience we use the old statute instead of the late revision) provides:

"By-laws and ordinances of municipal corporations may be enforced by the imposition of fines, forfeitures, and penalties, on any person offending against any such by-law or ordinance; and the fine, penalty, or forfeiture may be prescribed by each particular by-law or ordinance, or by a general by-law or ordinance made for that purpose; and the municipal corporation shall have power to provide, in like manner, for the prosecution, recovery and collection of such fines, penalties, or forfeitures."

That is a general provision. We doubt, after reading the case of Knoxville (City) v. Railway, *supra*, if the statutes of Iowa contained such a provision; if they had, we cannot see how the court could have arrived at the conclusion it did in the case I have just read. We think that under Sec. 1861 Rev. Stat. (repealed 96 O. L. 96) the council had power and authority to provide for the prevention of injury or nuisance from anything dangerous, offensive or unwholesome, by the imposition of appropriate penalties for doing or attempting to do that which would result in injury or nuisance, or anything offensive, dangerous or unwholesome; and that the power to cause the nuisance to be abated was an additional power vested in the municipality. Neither do we think that paragraph fourteen of Sec. 1692 Rev. Stat. (repealed 96 O. L. 96) is exclusive on the subject of explosives; we think that gives the council additional power over explosives. They may regulate the transportation and keeping of gunpowder and other explosive and dangerous combustibles and provide or license magazines for the same; but it does not follow that they may not also do that which would prevent injury or nuisance or anything dangerous, offensive or unwholesome. In other words, they may with propriety and reason, prevent the storage of certain kinds of explosives within the limits of the municipality, and they may regulate the transportation and keeping therein of any gunpowder or other explosive. They may pass an ordinance that would be permissive in its nature and character up to a certain point, but with respect to certain other explosives in their judgment, and as a matter of fact, too dangerous to permit of their storage within the corporate limits of the municipality, too dangerous to permit of their being transported through the corporation in any quantity, we have no doubt they may go further and absolutely prohibit the storage and transportation of such explosives.

Walter v. Bowling Green.

The council seems to have been of the opinion in passing this ordinance that nitroglycerine was an explosive of that character; so extremely dangerous that it was not wise to permit any quantity thereof to be stored within the corporate limits, or to permit any quantity of it to be transported through the city, and we cannot find from anything in this record, and we are not apprised of anything, that would cause us to doubt the wisdom of the action of council in providing for this absolute prohibition.

We do not find therefore, that the ordinance is invalid on the ground that the council exceeded its statutory authority. We might have decided this upon the authority of Hays v. St. Marys (Vil.), 55 Ohio St. 197 [44 N. E. Rep. 924], but since counsel has undertaken to distinguish between the ordinance there and the ordinance involved in this case and has pointed out that the court in that case did not reason upon the question, and urged that it may have entertained different views if such an ordinance as is here presented had been before that court for consideration, we have taken some pains to discuss the question. In that case it was held that an ordinance of a village prohibiting the storage within its limits and the transportation along its streets of dynamite or nitroglycerine in quantities larger than five quarts, being within the power conferred upon cities and villages by Sec. 1692 Rev. Stat. (repealed 96 O. L. 96) and not inconsistent with the provisions of Lan. R. L. 10622 (R. S. 6953) is valid. In the body of the opinion the court say, page 198:

"The ordinance is within the power conferred upon cities and villages by subdivision three of Sec. 1692 Rev. Stat., 'to prevent injury or annoyance from anything dangerous, offensive or unwholesome, and to cause any nuisance to be abated,' and subdivision fourteen of the same section 'to regulate the transportation and keeping of gunpowder and other explosive and dangerous combustibles, and to provide or license magazines for the same.' "

It is also contended, as I have said, that the penalty is excessive; a fine of $100 and costs of prosecution was imposed.

Section 1862 Rev. Stat. provides:

"Fines, penalties, and forfeitures which do not exceed the sum of $50 for any specified offense, or violation of the by-law or ordinance, or double that sum for repetition of such offense or violation, or which do not exceed $10 for each day where the thing prohibited or rendered unlawful is, in its nature, continuous in respect to time, shall not be deemed unreasonable; but where in any by-law or ordinance a greater fine, penalty, or forfeiture is imposed than as above specified, it shall be

lawful for the court or magistrate, in any suit or prosecution for the recovery thereof, to reduce the same to such amount as may be deemed reasonable and proper, and to permit a recovery or render judgment accordingly.''

So that even if the penalty imposed were excessive, authority is found under this section to reduce the amount within the limits authorized; but, is this fine excessive? It is contended on behalf of plaintiff in error that Sec. 1862 Rev. Stat. (repealed 96 O. L. 96) provides a limit of $50 as the maximum amount of fine that may be imposed for the first offense. That question has been considered and passed upon by the Supreme Court in the case of Alliance v. Joyce, 49 Ohio St. 7 [30 N. E. Rep. 270], where it is said:

''Under Sec. 1862 Rev. Stat. a fine prescribed in a municipal ordinance, of more than $50 for any specific offense, or more than double that sum for each repetition of such offense, is not to be deemed in all cases unreasonable; but, the ordinance may, in some cases, be enforced by a fine greater than is specified in Sec. 1862, it being lawful for the court or magistrate, in any suit or prosecution for the recovery of the increased fine, to reduce the same to such amount as may be deemed reasonable and proper by the court or magistrate.''

The contention there was, that this section provided a limitation upon the maximum amount that might be imposed as a fine for the first offense of $50, but the court did not sustain that contention. Judge Dickman, in the opinion says, page 19:

''But, the section of the statute under consideration, contains no words forbidding the enforcement of an ordinance by a fine in excess of $50 for the first offense. On the contrary, the reference to an imposition of a greater fine would indicate, that in some instances, it might become proper and necessary for municipal councils to attach a severer punishment than a fine of $50, as in the case at bar, in which the ordinance provides, that any person violating any of its provisions, shall, upon conviction thereof, be fined for the first offense, not less than $50 nor more than $200. And where it is provided in the statute, that a fine not exceeding $50, 'shall not be deemed unreasonable,' it would not follow, that a fine greater than that sum for an offense of a serious nature, would be deemed unreasonable for the enforcement of a municipal ordinance.

''It would seem, that by reason of the probable need of an increased fine in certain cases, the legislature incorporated in Sec. 1862 Rev. Stat. the provision we have before cited, that, 'where in any by-law or ordinance a greater fine, penalty, or forfeiture is imposed than as above

Walter v. Bowling Green.

specified, it shall be lawful for the court or magistrate, in any suit or prosecution for the recovery thereof, to reduce the same to such amount as may be deemed reasonable and proper.'

"But to what amount shall such reduction be made? If in the ordinance a fine of $200 for the first offense is imposed, it is not required that the fine shall be reduced to $50, as a reasonable and proper amount, but it will be within the meaning of the statute, if the court or magistrate either inflicts the full penalty, or reduces it to any sum between $50 and the maximum of $200."

We are not apprised of any fact with respect to nitroglycerine and its probable effects upon life and property, should an explosion occur, that would justify us in saying that in our opinion a fine of $100 for the first offense of storing that substance, or for transporting that substance in or through a thickly settled community, a city like Bowling Green, where the destruction of life and property from its explosion might be enormous and appalling, is excessive. Indeed, in our opinion found from observation and investigation it is a most dangerous substance. That may be safely affirmed as a fact of common knowledge. The testimony in this case tends to show that a sufficient quantity was transported through the town to have destroyed the lives and property of a great many inhabitants had an explosion occurred, and the general knowledge of the substance is, that it is likely to explode when an explosion is least expected; that it is liable to explode during the process of conveyance by the methods commonly used to transport it from the magazine to the wells where it is to be exploded; it is also likely to explode without apparent cause even where it is stored in magazines. In view of the result we have reached in this case, it may not be necessary for us to discuss or pass upon these questions specifically, but we deem it proper to do so, and to express the opinion that we entertain now, that a fine of $100 for the first offense is not excessive or unreasonable.

The contention that the conviction was against the law, because not supported by any competent evidence, we will not take time to discuss, but we will simply announce that we think there was competent evidence, in the main circumstantial, tending to show that the accused was guilty of the offense charged against him. We come now to the consideration of the last error assigned or argued, viz., that the mayor erred in admitting hearsay evidence. As I have said, most of the evidence tending to show that the defendant committed this offense, was of a circumstantial nature. He was seen driving out of town at an early hour of the morning with his nitroglycerine wagon; he was seen going

towards the magazine where the company for whom he worked kept its nitroglycerine stored. He was seen returning to, and passing through the town at such time thereafter as would just fairly allow him to go to the glycerine magazine, load up his wagon and come back. He was followed to a well, some distance from the town, which it appears was shot with nitroglycerine that day, perhaps with a hundred quarts. These, and other circumstances tend to fasten the guilt upon him.

In the course of the examination, Mr. Reed, the chief of police was called as a witness. He had been apprised of the suspicious conduct of the accused and had followed him to the vicinity of this well that was shot. He does not appear to have learned a very great deal of what was going on there; at least not at first hand. He followed the wagon after it left the corporation, trailing it by means of the tracks that the wheels left, and finally came in view of the wagon; he followed the defendant until he disappeared at the well. Mr. Reed did not go to the well at once nor until after the shells containing the explosive had been lowered into the well, but he says he received some information as to the amount of nitroglycerine that was used in shooting this well. He was asked by the court:

"Mr. Reed, about how many quarts of glycerine were conveyed by means of this team of horses and wagon, through Wooster street, Bowling Green?" A. "I don't know, only from the information I gained at the well."

(Objected to.)

"Q. What was your means of information?" A. "I talked to the owners of the well, part owners interested in the well."

(Objected to.)

By the Court: "If Mr. Reed is possessed of any information to give him knowledge of the amount of glycerine, that is the information we want."

Counsel for defendant: "If he got his information from Mr. Walters, I presume he could tell it. I should object to his telling anything he got from anyone else."

By the Court: "Yes, Mr. Reed may answer that question. If you know how many quarts of glycerine were there, it is a question of knowing. The question does not measure up the exact quantity. It is simply a question of about how many quarts, and if he has any means of knowing if there were so many quarts or about so many quarts, we are not interested especially where he got his information, but as to whether he knows."

(Objected to by counsel for defendant as incompetent.)

Walter v. Bowling Green.

By the Court: "I think you may answer that question if you know.  Do you know about how many quarts were transported over Wooster street?"

(Objected to by defendant; overruled and exception.)

A.  "Well, from one source, I ascertained it was 120 quarts; from another source I ascertained it was 115 quarts."

(Counsel for defendant asked that the answers be stricken out as hearsay evidence; motion overruled and exeception.)

On cross-examination the witness is asked:

Q.  "The information you received was not from Mr. Walters?"  A.  "Not from Mr. Walters, no."

(Defendant renewed his motion to strike answers from the record as hearsay evidence.)

By the Court:  "He hasn't said he got it as hearsay evidence."

(Motion overruled and exception.)

We are only required to apply to this, certain elementary law upon the subject of hearsay evidence.  There is not much difference in the statements of the writers upon the subject in the different text books. I will read from Bradner, Evidence (2 ed.) 2:

"Hearsay is the evidence of those who relate, not what they know themselves, but what they have heard from others.  Such mere recitals or assertions cannot be received in evidence for many reasons, but principally for the following:  First, that the party making such declarations is not on oath; and secondly, because the party against whom, if it operates, has no opportunity of cross-examination."

Reading from pages 412 and 413 it is said:

"It is a general rule that hearsay evidence is not admissible to establish any specific fact which, in its nature, is capable of being proved by witnesses who speak from their own knowledge; or, in other words that evidence whether written or spoken, which does not derive its credibility solely from the credit due to the witness himself, but rests in part upon the veracity and competency of some other person from whom the witness received the information, is not admissible to establish a substantive fact.  And this is the rule although the matter sought to be proved was, at the time it was made, against the interest of the person making it, and although no other evidence can  possibly be obtained; as, where it is the declaration of a person who was the only eyewitness and who keeps out of the way to avoid being subpœnæd. The reason of the rule is, that such evidence requires credit to be given to the statement of a person who is not under the obligation of an oath or any of the ordinary tests for ascertaining the truth of the statement.

The above rule is subject to many exceptions which are as well established as the rule itself. These exceptions are mainly under the following heads: 1. Admissions by parties in interest. 2. Pedigree. 3. Boundaries. 4. Dying declarations. 5. Relating to matters of general public concern. 6. Declarations or entries made in the course of office or business. 7. Ancient possession. 8. Declarations against interest by person deceased. 9. Testimony given by a witness on a former trial, since deceased."

"The term 'hearsay' is used to denote that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also, in part, on the veracity and competency of some other person. Thus, testimony of a witness as to what he has been told, but who knows nothing personally, is mere hearsay; as, the testimony of a physician, that other physicians concurred with him in his opinion, is hearsay. So testimony of plaintiff, in an action for breach of promise, that she heard that defendant was very rich."

Of course there are a multitude of illustrations. It seems to us that this evidence comes fairly and clearly within the rule prohibiting hearsay evidence. Mr. Reed does not say simply, that it was information he got at the well, but in answer to the question of the mayor as to his means of knowing, he says "I talked to the owners of the well." He does not say that Mr. Walters said anything on the subject. He does not say that Mr. Walters was present and heard what was said. His statement was received as evidence upon a very material matter in the prosecution—the question whether in fact the substance used was nitroglycerine. Of course the quantity was not a matter of a very great deal of importance, but it had not been established that there was any nitroglycerine in the wagon; it had only been indicated circumstantially. But, assuming that there was sufficient evidence on the point without this, where incompetent evidence upon a material point is received and considered, we cannot undertake to support a judgment upon the theory that there may have been sufficient evidence without it, or that the incompetent evidence may have been given little weight. The mayor insisted that this evidence be produced, and upon his insistence it was produced, and in our judgment this was error, requiring reversal of this judgment, and therefore the judgment will be reversed, and the cause remanded to the mayor's court to be proceeded with according to law.

**Hull** and **Haynes, JJ.,** concur.