NEW-YORK,
October, 1811.

BUSH
v.
SEABURY.

In a suit before a justice, an *infant* must appear by guardian.

In an action of trespass for taking a heifer, the father of the defendant, and by whose order the trespass was committed, was held to be a competent witness for the defendant.

---

## BUSH and others *against* SEABURY.

By the "Act to vest certain powers in the freeholders and inhabitants of the village of *Poughkeepsie*," passed the 8th *April*, 1801, (sess. 24 c. 182.) the trustees of the village have power to make a by-law to prevent the sale of meat, &c. for the consumption of the inhabitants, within certain prescribed limits, except at the public market place; and an action may be maintained by the trustees, to recover the penalty given for every offence against such by-law.

IN error, on *certiorari*, from a justice's court. The plaintiffs in error, as trustees of the village of *Pough-*

NEW-YORK,
October, 1811.

BUSH
v.
SEABURY.

*keepsie*, brought an action of debt against the defendant, fo five penalties or forfeitures, under the act of the legislature, entitled "An act to vest certain powers in the freeholders and inhabitants of the village of *Poughkeepsie*," passed the 8th *April*, 1801, (sess. 24. c. 182.) and a certain *by-law* of the corporation of the village of *Poughkeepsie*, entitled "A law to regulate the public market of the village of *Poughkeepsie*, and to prevent forestalling the same," passed *June* 12, 1809." The defendant pleaded *nil debet*. There was a trial by jury.

The plaintiffs read in evidence the act of the legislature which declares, "That it shall be lawful for the trustees of the said village, or the major part of them, and their successors, to make, ordain and publish such prudential by-laws, rules and regulations, as they, from time to time, shall deem meet and proper, and such in particular, as are relative to public markets within the said village, and relative to streets," &c. "and relative to any thing whatsoever that may concern the public and good government of the said village; but no such by-laws shall extend to the regulating or ascertaining the prices of any commodities or articles of provision, except the article of bread, that may be offered for sale." (s. 3.) They also read the by-law of the corporation, by the second section of which it was ordained, that after the 1st *July*, no person or persons should, within certain limits, particularly set forth, and described, "hawk about any kind of beef, pork, veal, mutton, or any other kind of meat by selling the same for the consumption of the inhabitants, and that any person wishing to sell the same, for the purpose aforesaid, shall repair to the public market-house, and there expose the same for sale," &c. under the penalty of five dollars for every offence.

Three offences, by the defendant, in selling meat, out of his wagon, within the limits mentioned in the by-law, were proved. The justice charged the jury, that the trustees of the village of *Poughkeepsie* had no power to

NEW-YORK,
October, 1811.

Bush
v.
Seabury.

pass such a by-law, and that the same was illegal and void; and further, that the plaintiffs could not recover in this action more than a single penalty. The jury found a verdict for the defendant.

*Ruggles*, for the plaintiffs in error,

*Oakley*, contra,

*Per Curiam.* The act incorporating the village of *Poughkeepsie*, authorizes the trustees to make by-laws, " relative to public markets within the said village, &c, and relative to any thing whatsoever that may concern the public and good government of the said village, but no such by-laws shall extend to the regulating or ascer- taining the prices of any commodities or articles of pro- vision, except the article of bread, that may be offered for sale." Without this special exception, it would seem that even the regulation of the price of provisions might, in the opinion of the legislature, have been included un- der the general authority contained in this provision. The fixing the *place* and times at which markets shall be held and kept open, and the prohibition to sell at other places and times, is among the most ordinary regulations of a city or town police, and would naturally be inclu- ded in the general power to pass laws relative to the pub- lic markets. If the corporation had not the power in question, it is difficult to see what useful purpose could be effected, or what object was intended, by the grant of the power to pass laws " relative to the public markets." The mere regulation of the building and of the stalls of those who might choose to go there, instead of else- where, to sell their market provision, would be an idle and useless power, and of no moment towards the good government of the village. Extravagant cases may be stated of the abuse of the power, as by an ordinance to re-

gulate the sale of wheat, &c. but this is not a logical way to test the existence of the power.

There was no objection taken in the court below to the manner in which the corporation sued, nor as to the place where the offences were proved to have been committed. The declaration was by the plaintiffs, in their corporate style, and we must intend that they duly appeared, and that the sales by the defendant were within the prescribed limits, and that the verdict was founded on the charge of the justice that the by-law was illegal and void. That charge being erroneous, the verdict was also wrong, and the judgment must be reversed.