### The City of Davenport *v.* Kelley.

Where a city charter confers upon the council, authority to establish and erect market houses and market places, and provide for the government and regulation thereof, the right to establish, necessarily carries with it, the power to prohibit the exposing and offering for sale, meat at other places than the council may designate.

The City of Davenport v. Kelley.

The city of Davenport, under its charter, possesses the power to pass an ordinance prohibiting the exposing and offering for sale fresh meat, in less quantities than one quarter, at a place other than the regularly established market houses.

Nor is such an ordinance in restraint of trade. It regulates, but does not restrain.

A city possessing the power to establish and regulate markets, cannot delegate to individuals the right to erect market houses, and charge rent for the use of the stalls therein, reserving to itself no power to control the same ; nor can the city compel persons to go to these markets, and rent the stalls.

Where the city of Davenport passed an ordinance, giving by lease to certain persons, the power, for the convenience and benefit of said city, to erect buildings in said city to be denominated market houses, for the purpose of renting, leasing and hiring the stalls, rooms, bunks, and other conveniences therein, for hire, to such persons as the lessees may deem advisable and proper, to be used for the purpose of disposing of fresh meats, vegetables, &c., as is customary and proper, in public market houses, which ordinance provided on the part of the city, that no other market houses should be established; that such ordinances should be passed as would protect the lessees from competition, in having fresh meats, &c., sold in any other place than in said market houses—that the city would regulate the hours of marketing, dictate the mode and manner of conducting the same, appoint proper officers to preserve order, and see that the ordinances in relation to markets are complied with—that the city would authorize the lessees to rent their stalls, rooms, and conveniences of their building conformably thereto, and compel the citizens and others exposing marketing for sale, to comply with all such ordinances, and to sell and dispose of their marketing at said markets—the privilege thus conferred to continue ten years, upon certain conditions, and the lessees to pay the city annually the sum of ten dollars; and where the lessees did erect market houses, and the city passed an ordinance which provided, that, "no person, not being the lessee of a stall, in one of the regularly established market houses, shall expose and offer for sale, in the city of Davenport, any fresh meats in less quantities than one quarter, nor shall any person offer or expose for sale, such meats, at any other place than said market houses ;" and where a party was charged with a violation of the ordinance last referred to ; *Held*, 1. That the city had power, under its charter, to pass the ordinance; 2. That the city could not confer upon individuals its power to erect market houses, and authorize them to receive the rents to be charged for the use of the stalls therein, without any control on the part of the city, and that no one was bound to lease the stalls ; 3. That the fact that the city gave the lessees absolute control over the rents of the buildings, rendered the houses entirely and distinctly *private;* 4. That the defendant, under the circumstances, was not liable under the ordinance last referred to. (WRIGHT, C. J., dissenting.)

*Appeal from the Scott District Court.*

Tuesday, October 26.

The defendants were charged before the police magistrate of the city of Davenport, with violating an ordinance of said city, by offering and exposing to sale fresh meats, in less quantities than one quarter, at a place other than the regularly established market houses. They were found guilty, fined twenty dollars, and appealed to the district court. In that court they were found not guilty, upon the ground that the city had no right to prohibit the defendants from keeping meat and exposing it for sale, upon their own premises, within the city limits. . Plaintiff appeals.

*James A. Buchanan* and *James Grant,* for the appellant.

*Cook, Dillon* and *Lindley,* for the appellees.

Wright, C. J.,—That the defendants did expose and offer for sale fresh meats, upon their own premises, within the city at the time, and in the manner charged in the complaint, is not denied. It is also admitted that two public market houses were established, and that defendants were not the lessees of a stall in either of the houses so established. It is also conceded, that at the time the meats were so offered for sale, an ordinance was in force, which contained the following section : "No person, not being the lessee of a stall in one of the regularly established market houses, shall expose and offer for sale in the city of Davenport, any fresh meat, in less quantities than one quarter ; nor shall any person offer or expose for sale such meat, at any other place than said market houses."

The question is, had the city the power, under the charter, to pass this ordinance, so as to make the defendants, or other persons, liable for offering and exposing meats for sale upon their own premises. The charter of said city, (Laws of 1851, art. 5, sec. 2, 117,) gives the city council

power "to make regulations to secure the general health of the inhabitants; to erect market houses, establish markets and market places, and provide for the government and regulation thereof;" and to make all ordinances which shall be necessary and proper for carrying into execution the powers specified in this act, so that such ordinances be not repugnant to, or inconsistent with, the constitution of the United States, and of the State of Iowa.

By section 9 of chapter 57, Laws of 1855, it is provided that "all the powers provided in the Code, for the organization of cities, are hereby conferred on the city of Davenport." By the Code, chapter 42, section 665, a charter formed by the inhabitants of a city, may confer power upon the city authorities to establish such ordinances as are necessary for the good regulation, safety, health, and cleanliness of the city, and the citizens thereof, and to regulate markets, but not in such a manner as to prevent any person from selling the produce of his own farm, in such manner and quantities, as he may deem proper. By the 8th section of chapter 57, of Laws of 1842, the said city had power to pass all by-laws and ordinances, " to regulate and establish markets, to rent out the stalls in the same, and to prohibit the selling of meats, poultry, fish or game, except at the public market." This Act, as well as all others coming within the provisions or purview of the Act of 1851, (Laws 1851, 117,) were repealed by section 11, of Art 8, of said Act of 1851.

We have thus given the substance of the statutes which are claimed by counsel, to have a bearing upon the question involved. And resting alone upon the language of the Act of 1851, we think the city had the power to pass this ordinance.

The appellees claim the rule to be, that " unless the power claimed for a public corporation, is expressly given by the act of incorporation—is necessary to complete the performance of some duty conferred upon them by law— or is incidental to their very existence—it cannot be exercised." To sustain this proposition, counsel cite 2 Kent Comm., 298: *Comr's. Gallia County* v. *Holcombe,* 7 Ohio,

232; *Collins* v. *Hatch*, 18 Ib., 523; *Head* and another v. *Prov. Ins. Co.*, 2 Cranch, 127. To this it may be added, that corporations also have such powers as are necessary for the purpose of carrying into effect the powers express-ly granted; 2 Kent, 298.

In our opinion, we need not go beyond this statement of the rule, to find authority for the ordinance in question. The city council had authority to erect market houses, es-tablish markets, and market places, and provide for the government and regulation thereof. If the right to estab-lish markets and market places, does not necessarily carry with it, the power to prohibit the exposing and offering for sale, of meats at other places than the council may desig-nate, then the power given would practically amount to nothing. If they may establish market places, and yet any and every citizen may sell at any other place in the city, than these market places, whether upon his own prem-ises, or otherwise, the power given would be an idle and a useless one. We cannot conceive how it would be possi-ble, to carry into effect the power given, unless the coun-cil may exercise the further power to confine such mar-ket sales to the places by them established. The case of *Buck and others* v. *Seabury*, 8 Johns., 418, we think, is clearly in point upon this question. The act incorporating the village of Poughkeepsie, in New York, authorized the trustees to make by-laws "relative to public markets with-in the said village." The court says: "The fixing the place and times at which markets shall be held and kept open, and the prohibition to sell at other places and times, is among the most ordinary regulations of a city and town police, and would naturally be included in the general power to pass laws relative to the public markets. If the corpora-tion had not the power in question, it is difficult to see what useful purpose could be effected, or what object was intended, by the grant of the power to pass laws relative to the public markets. The mere regulation of the build-ing, and of the stalls of those who might choose to go there, instead of elsewhere, to sell their market provisions, would

be an idle and useless power, and of no moment towards the good government of the village." And to the same effect, see *Village of Buffalo* v. *Webster*, 10 Wend., 100; *Nightingale, petitioner*, 11 Pick., 167; *City of Raleigh* v. *Sorrell*, 1 Jones' Law Rep., 49; *Stokes* v. *New York City*, 14 Wend., 87. Would it be pretended, that after the city had established the market places, the defendants could erect on their own premises market houses, and sell therein meats, in violation of a city ordinance. If they could, then what object or intention could there have been in giving the power to erect market houses, establish markets and market places, and provide for their government and regulation, to the city council? And if the defendants could not do that, then they would have no right to violate the ordinance, by the sale of the prohibited meats upon their own premises, without the erection of a market house.

Nor can it be claimed with propriety, that this ordinance is in restraint of trade. It regulates, but does not restrain, and as a regulation there is no conceivable objection to it.

The suggestion that the act of 1842 expressly prohibited the sale of meats, except at the public markets, and that the act of 1851 contains no such provision, and the argument drawn therefrom, that it was therefore not intended to give this power, is answered, as it seems to us, by the further thought, that while by the first act there was no power expressly given to establish market places, this power is given by the last act; and thus, as we construe it, the same power in this respect is given, as was conferred, by more specific and express language, under the act of 1842.

We have said that two market houses were established, and that defendants were not the lessees of a stall therein. It is claimed, however, that the houses so established and erected, are *private*, and not *public* markets; and that defendants cannot be punished for selling their meats on their own premises, and outside of such private market

houses. On the 18th of October, 1854, the city passed an ordinance, giving by lease to certain persons, the power, "for the convenience and benefit of said city, to erect and put up" buildings in said city, to be denominated market houses, "for the purpose of renting, leasing, and hiring the stalls, rooms, bunks, and other conveniences therein for hire," to such persons as they, the said lessees, "may deem advisable and proper, to be used for the purposes of disposing of fresh meats, vegetables, &c., as is customary and proper in public market houses." By this ordinance, it was also provided, on the part of the city, that no other market houses should be established—that such ordinance, or ordinances, should be passed as "will protect them, (the lessees), from competition in having fresh meats, &c, sold in any other place than in said market houses—that they, (the city), will regulate the hours of marketing; dictate the mode and manner of conducting the same; appoint suitable and proper officers to preserve order, and see that the ordinances in relation to markets are complied with; and will authorize them, (the lessees), to rent their stalls, rooms, and conveniences of their building, conformably thereto, and will compel citizens and others exposing marketing for sale, to comply with all such ordinances, and to sell and dispose of their marketing at said markets." The privilege given by this ordinance, upon certain conditions, was to continue for ten years, and the lessees were to pay for the privilege so given the sum of ten dollars per annum. In pursuance of this ordinance, the lessees did erect market houses; and the question is, were the defendants compelled to rent stalls from these persons, and to sell their meats in these houses?—were they liable for selling upon their own premises? or, in other words, could the city delegate to individuals the right to erect these market houses—to charge rent for the use of the stalls—and compel all persons to go to these markets, and rent stalls, under the penalty fixed by the ordinance claimed to be violated in this instance?

I am instructed to announce, as the opinion of a majori-

ty of the court, that the defendants could not, under the circumstances, be so compelled, and are not liable in this action. Without expressing an opinion by which they would wish to be conclusively bound, they incline to believe, that the markets so established, are *private*, and not *public ;* that the charter contemplates the erection of markets by the city, to be under its entire and exclusive control; and that it has no right to delegate this power to individuals for their benefit and profit, and then punish those who may decline, or refuse to rent stalls in such markets. But while the majority of the court entertain a doubt, and express no opinion by which they wish to be bound, upon this view of the question, they conclude and hold, that defendants are not liable, for another reason. Full power, as this ordinance is understood, is given to the persons erecting these market houses, to control the rents to be charged for the use of the stalls therein, by the occupants, without any control on the part of the city. This power, it is held, the city could not confer; and having conferred it, no one is bound to lease the stalls—that this fact makes the houses entirely and distinctly *private.* It is believed that by this act, the city has surrendered its right to regulate the price to be paid; that it is subject to the will of the owners of the houses; and that this power should have been retained by the city—for that otherwise, it gives power to such owners to make rules which will restrain, instead of regulate, trade.

I have stated above, briefly, the view taken by a majority of the court. In this conclusion, I do not concur. If the city has the power to require those who may vend meats, to sell the same at the public markets, then I conceive that it may, by ordinance, authorize the erection of the houses by individuals, which it may adopt and declare to be public market, or markets, of the city. And this, I understand, to be the effect of the ordinance of October 18, 1854. I think it was entirely in the power of the city, either to erect these houses, or employ individuals to do it, and when the proper authorities have determined which

course would be most for the advantage and benefit of the city, it is not for this court to say their determination is so impolitic and unwise, as to justify interposition. The city, as we have seen, has the power to "erect market houses, establish markets and market places," and to pass "all ordinances which shall be necessary and proper for carrying into effect the powers specified" in the charter—and if, in the exercise of this power, the city council shall, before or after the erection, adopt and recognize a particular house, or houses, as the market place or places, I can see no objection to it; and least of all do I see, why the defendants can make the objection; and so far as relates to the objection that the lessees are given the power to fix the rates of rent to be paid, I think it is entitled to even less weight than the other. The object of the ordinances upon this subject, is to regulate the markets and trade. So long as this is done, and no more, the city has the power to act. If the lessees shall fix the rates, (granting that they have the power under the ordinances), at such an amount as to operate as a restraint upon trade, the objection might avail; but, even then, with no more force than if the same thing was done directly by the city. Until it is shown that the amount exacted, or required, has had this effect, I cannot conceive why the fact that the lessees, rather than the city, have the power to regulate the rents, should control the question of defendant's guilt.

I will not, however, further state the reasons for my conclusion. I have not designed to do more than to present, briefly, the views entertained by a majority of the court, as well as my own. The result of these views is to affirm the judgment. Judgment accordingly.