The City of St. Louis v. Weber.

THE CITY OF ST. LOUIS, Respondent, *v.* FREDERICK WEBER, Appellant.

1. *Corporations— Charter of St. Louis— Meat shops — City council.*—The city of St. Louis, under the charter of March 3, 1851, authorizing the city council to "establish markets and market places, and to regulate the vending of meat," (Sess. Acts, 1851, p. 155,) had power to provide by ordinance that no person, not being the lessee of a butcher's stall, should sell or offer for sale in market, or in any other place, any fresh meat in less quantities than one quarter (City of St. Louis v. Jackson, 25 Mo. 37), and the tenth and thirty-first subdivisions of section 1, art. 4, of the revised charter of March 13, 1867 (Sess. Acts 1867, p. 63), did not have the effect of repealing that power.

2. *Corporations — Granted powers, exercise of — Reasonableness of.*— Corporations can not go beyond the powers granted to them, and must exercise such granted powers in a reasonable manner. And courts must judge in each case before them, whether the exercise of the power be reasonable. A clear case should be made out to authorize an interference by them on the ground of unreasonableness.

3. *Ordinances — Meat shops —Reasonableness of ordinance 5,832.*—Ordinance 5,832, in relation to markets in the city of St. Louis, excepting from the prohibition of meat shops that part of the city embraced in the new limits, and more than six squares from any market, was eminently just and reasonable.

*Appeal from St. Louis Criminal Court.*

*Garesche & Mead,* and *S. Reber,* for appellant.

I. The ordinance 5,434, relating to markets, is invalid, because unreasonable and not warranted by the charter in force when it was passed. (Commissioners v. Gas Co., 12 Penn. St. 318; Mayor of Hudson v. Thorne, 7 Paige, 261; 3 Pick. 462.)

II. If the city council had power under the charter of March 3, 1851, to prohibit or suppress meat shops, the power to prohibit was taken away by the charter of March 19, 1866 (Sess. Acts 1866, p. 284, clause 2), amending the charter of 1851, and the present charter, approved March 13, 1867 (in clause 2, p. 63, Sess. Acts 1867), has the same provisions. The charters of 1866 and 1867 only confer on the city the power to regulate, and not prohibit or abolish, meat shops; and therefore also the ordinance 5,832, so far as it prohibits meat shops, is invalid. (Bethune v. Hughes, 28 Ga. 560.)

III. The charters of 1866 and 1867 repeal, by necessary

implication, so much of the ordinance 5,434 as abolishes or prohibits the establishment of meat shops in any part of the city, even if that were originally a valid ordinance; and therefore ordinance No. 6,508, which is amendatory of No. 5,434, and is incomplete in itself, is inoperative, because the latter was originally void and has also been repealed.

V. All such legislation as the ordinances prohibiting meat shops is in restraint of lawful trade and therefore invalid. (City of St. Paul v. Laidlow, 2 Minn. 190; Bethune v. Hughes, 28 Ga. 560.)

*Charles P. Johnson*, circuit attorney, and *Krum, Decker & Krum*, and *Woerner & Kehr*, for respondent.

I. Under the charter of 1851 the validity of the ordinance in question was judicially determined. (Jackson v. City of St. Louis, 25 Mo. 37.)

II. The thirty-first subdivision of section 1, article 4, revised charter 1867, "to regulate the vending of meat," is not a repeal, but an additional grant of powers.

III. The meat-shop ordinances are not in restraint of trade. (Williams v. The City Council of Augusta, 4 Ga. 509; Nagle v. same, 5 Ga. 546; Green v. Mayor and Aldermen of Savannah, 6 Ga. 1; City Council v. Ahren, 4 Strobh. 241; Wainsboro v. Smart, 11 Rich. 551; Shelton v. Mayor of Mobile, 30 Ala. 540, reciting 3 Ala. 137; White v. Kent, 11 Ohio, 550; St. Paul v. Troyer, 3 Minn. 291; Paige v. Fazackerly, 36 Barb. 392; Yates v. Milwaukie, 12 Wis. 673; Lawrenceburg v. Wuest, 16 Ind. 337; Ash v. The People, 11 Mich. 247, with numerous authorities there cited; City of Brooklyn v. Cleves, Hill & Denio's Sup., N. Y., 231; Perdue v. Ellis, 18 Ga. 586.

BLISS, Judge, delivered the opinion of the court.

Defendant was fined for keeping a meat shop within the market limits, or limits within which meat shops are prohibited by the ordinances of St. Louis. Ordinance No. 5,434, in relation to markets, approved September 6, 1864, provided, by section 5, article 5, that "No person, not being the lessee of a butcher's

stall, shall sell or offer for sale in market, or in any other place, any fresh meat in less quantities than one quarter." Section 1, of art. 8, of the same ordinance authorizes meat shops to be licensed in the extended new limits of the city, but not within four blocks of any market-house. Ordinance 5,832, of March 20, 1866, changed the above limits by prohibiting meat shops within six blocks of a market-house, and ordinance 6,508, section 11, imposes a penalty for the violation of section 5, art. 5, of ordinance 5,434.

The appellant urges that these ordinances are invalid, for the reason, first, that they are not warranted by the city charter; and second, if warranted, they are an unreasonable exercise of the powers granted. The charter of March 3, 1851 (Sess. Acts 1851, p. 155), authorized the council "to erect market-houses, establish markets and market-places, and provide for the government and regulation thereof," and, in section 31, also to regulate "the vending of meat, poultry, vegetables," etc. This court, in The City of St. Louis v. Jackson, 25 Mo. 37, expressly affirms the power of the city under the authority cited to pass an ordinance in the precise language of section 5, art. 5, of ordinance 5434 above quoted, and we can see no sufficient reason for disregarding that decision, although there are some authorities apparently adverse to it. Appellant claims such changes in legislation, both by the State Legislature and city council, as to make the question a new one.

A revision of the city charter was had March 18, 1867 (Sess. Acts 1867, p. 58), which changed the phraseology of the previous grant. The eleventh subdivision of section 1, article 4, p. 63, grants the council power "to erect market-houses, purchase market-houses already erected, * * establish markets, market-places, and meat shops, provide for the government and regulation thereof, and the amount of licenses to be paid therefor;" and the thirty-first subdivision gives power * * "to regulate the vending of meat, poultry, fish, and vegetables, etc." This revision, it is claimed, changes the power, and operates as a repeal of the previous ordinance. If it took away the power to pass such an ordinance, it would have that effect; but the only

change I can see is that the revision adds to the former power of establishing markets, also that of establishing and licensing meat shops. It leaves the former power of establishing and regulating markets and regulating the selling of meats untouched; so that if an ordinance like the one under consideration in The City v. Jackson were lawful under the former charter, it is so under the revision.

It can not be claimed that the city council can derive any authority for an ordinance already adopted, from the new powers given by the amendment to the charter of 1868, referred to by counsel, and I do not understand the validity of the one in question, or of that part of it involved in this suit, to depend upon the act of that year, but rather upon the power long before given to "establish markets and market places," and "to regulate the vending of meat," etc. These two powers are very broad and comprehensive, and existing as they did before the ordinance in question, and being embraced in every amendment, would seem to warrant any reasonable legislation upon the subject.

The matter of the second claim, that the council have executed their power in an unreasonable manner, has not been adjudicated. That corporations have none of the elements of sovereignty, that they can not go beyond the powers granted them, and that they must exercise such granted powers in a reasonable manner, are propositions that can not be disputed. And the court must judge in each case whether the exercise of the power be reasonable. (Commonwealth v. Worcester, 3 Pick. 462, 473.) If this ordinance is oppressive, unequal, and unjust; if it be not a legitimate regulation of the vending of meat, but partial and unfair, establishing monopolies, or subjecting either the seller or purchaser to unnecessary inconvenience or expense, it certainly should not be upheld. In assuming, however, the right to judge of the reasonableness of an exercise of corporate power, courts will not look closely into mere matters of judgment where there may be a reasonable difference of opinion. It is not to be expected that every power will always be exercised with the highest discretion, and when it is plainly granted, a clear case should be made to

authorize an interference upon the ground of unreasonableness. The specification in the charge of unreasonableness is the fact that meat shops are prohibited in some parts of the city, and licensed in other parts. If this distinction be the mere caprice of the council, it should not be tolerated. But we find the reason in the ordinance itself, and in our knowledge of the boundaries of the city. When the city limits were extended, they took in a large area surrounding the city proper which was far removed from the public markets, and whose inhabitants had hitherto enjoyed free trade. To compel them all to resort to these markets for their supplies would have been oppressive, and hence an exception was made in their favor until markets should be established in their midst, so that the provision in the ordinance excepting from the prohibition of meat shops that part of the city embraced in the new addition, and more than six squares from any market, was eminently just and reasonable.

Counsel for appellant desire us to reconsider the doctrine of Jackson v. The City of St. Louis, and adopt that of St. Paul v. Laidlow, 2 Minn. 190, and Bethune v. Hughes, 28 Ga. 560. It is useless to attempt to reconcile these authorities, for there is a a clear and unmistakable conflict between them. The principles of the Minnesota case, and the opinion of the court in the Georgia case, would establish absolute free trade throughout the city in butchers' meats, and indeed in every other commodity, and would render it impossible to keep up the market system for family supplies in the cities of the State — a system believed to be, in the large towns, for the benefit of both seller and buyer, and conducive to public order, cleanliness, and health. In Bethune v. Hughes, the authority granted the city council in their charter was much more narrow than that of St. Louis, and the case might be reconciled with Jackson v. The City, but the language of Judge Lumpkin is very broad and somewhat peculiar. The only point actually decided, however, is embraced in the syllabus, which is, "that a grant to establish and keep up a market does not of itself imply the power to exclude all persons from selling elsewhere marketable articles during market hours." But the case of St. Paul v. Laidlow goes much further, and under

authority in the charter to establish and regulate markets, etc., and license butchers' stalls, shops, and stands, etc., an ordinance prohibiting the sale of fresh meat less than by the quarter, except at the stalls of the market, without license, was held to be illegal.

Courts are in the habit, more perhaps than they are aware, of looking to the hardship or necessity, *i. e.*, " the unreasonableness " of an act or regulation, in judging of its legality. In small towns, like Columbus, Georgia, and in an open and rural city like St. Paul, spread over a large surface, and situated in a climate where sanitary measures need hardly be considered, it is not strange that the inhabitants and courts should consider as vexatious, regulations that prevented family supplies from being delivered at the door, or that obstructed free trade in every neighborhood of the town. Regular markets, market-houses and places in such towns are hardly a necessity, and their convenience may be more than counterbalanced by the inconvenience of the restrictions necessary for their support. But in St. Louis it is very different. It has already become a town of great size, and is rapidly growing. The central and older parts are closely covered with buildings, with no ventilation but the narrow streets, and they, with all the convenience of street cars, constantly crowded. The burning heat of a large portion of the year brings rapid decomposition, and, without constant vigilance, would bring pestilence to every door. Public convenience, public decency, and public health demand that convenient and cleanly places, of easy inspection, should be provided for exposure for sale of all perishable and, especially, dressed articles of table consumption. In obedience to this demand, the city has erected large and expensive market-houses, and, at great cost, has secured grounds around them for the convenience of buyers and sellers. Let those who object to this action, or to the restrictions necessary to sustain it, imagine for a moment the condition of the streets and sidewalks, the effect upon fresh meats and tender vegetables of exposure to the soot and dust and heat of crowded blocks, if the market system were abolished. But if the system be adopted, and no one imagines it can be dispensed with, it must be supported by such restrictive legislation as shall make it exclusive;

OCTOBER TERM, 1869. 553

Chillicothe & Brunswick R.R. Co. v. The Mayor, etc., of Brunswick.

and here is the real and, if the system be not necessary, the just complaint. But being necessary, such legislation does not impose burdens, but only makes reasonable regulations to sustain it. There are places, doubtless, within the bounds of the prohibition upon sales of fresh meat, quiet and airy, where it could be exposed without incommoding the public, or injuring the commodity, but those places are few; and, within the limits supplied by the markets, the restriction must be uniform, or the system falls. It seems very plain to me that an ordinance confining the retail of fresh meats to the stalls of the public market-houses, in parts of the city where they are accessible, is not an unnecessary restraint upon trade, but a reasonable regulation, and necessary to the support of the local market system of the city. The power thus to regulate is not only sustained by Jackson v. The City of St. Louis, but by many authorities in other States. (See Ash v. The People, 11 Mich. 347; Davenport v. Kelley, 7 Iowa, 102; Bush v. Seabury, 8 Johns. 418; Buffalo v. Webster, 10 Wend. 99.)

The judgment of the Criminal Court is affirmed. The other judges concur.