M. W. DAVIS. *v.* THE STATE.

1. CONSTRUCTION OF STATUTES.—The general rule that, of several conflicting statutes, the latest prevails, is applicable, though such latest statute be but a municipal charter, or a special act.

2. LEGISLATIVE POWER.—In the absence of constitutional restrictions, it is competent for the legislature, by charter or special act, to empower a municipality to license within its limits occupations which are illegal and punishable under the general laws of the state; and a municipal charter and by-laws may, expressly or by necessary implication, thus supersede the general law on such subjects, within the limits of the corporation.

3. LICENSED HOUSES OF PROSTITUTION.—The Penal Code of 1856 punishes, for misdemeanor, keepers of houses of prostitution. By special act of the legislature of 1871, power to license such houses was conferred upon the corporate authorities of Waco, who by ordinance provided for such licenses, but reserved the right to annul any city license on repayment of unearned license money. *Held,* that the special act of 1871, and the municipal ordinance, exempted from the operation of the Penal Code a licensed keeper of a bawdy-house within the corporation, so long as the license remained in force; and that a repeal of the ordinance, before the expiration of the license, did not revoke or annul the license unless the license money for the unexpired term was repaid or tendered to the licensee. *And, further,* that a municipal license, so obtained and unannulled, constituted a defense in a state court to an indictment under the provisions of the Penal Code for keeping a house of prostitution within the limits of the licensing municipality.

4. CONSIDERATIONS based upon public policy or moral principles, impugning legislation of this character, should be addressed to the legislature or the municipal authorities, not to the courts.

APPEAL from the County Court of McLennan. Tried below before the Hon. G. B. GERALD, County Judge.

The case is fully stated in the opinion of the court.

*Clark & Dyer*, and *A. S. Miller*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Ector, P. J. This was an indictment under Article 2027 of the Criminal Code of the state of Texas (Pasc. Dig. 2027) for keeping a disorderly house, to wit, a house for public prostitution.

The defense relied on was a license from the corporate authorities of the city of Waco. The indictment charges that the defendant, Mrs. M. W. Davis, did keep such disorderly house, in the county of McLennan, on March 27, 1877. She was tried and convicted, and her punishment assessed at $120. She filed a motion for a new trial, which was overruled by the court, and the case is now before us on appeal.

The state proved that the defendant, on March 27, 1876,. and up to the filing of the indictment, did keep a disorderly house for the purposes of public prostitution, on N. 4th street, in the city of Waco and county of McLennan. The defendant then introduced and read in evidence the charter of the city of Waco, approved April 26, 1871 ; and read section 7,. from clause 1 to clause 18, inclusive.

" Sec. 7. The mayor and city council shall have power within the city, by ordinance, first, to levy and collect taxes," etc., and then proceeds to a specific enumeration of the several powers granted, embracing a great variety of subjects. The 18th of these clauses is : " To license, tax, and regulate billiard-tables, tippling-houses, and dram-shops, and to suppress gaming and gambling-houses, and other disorderly houses, or to suppress bawdy-houses or license the same."

The defendant next introduced and read in evidence an ordinance of the city of Waco, passed July 12, 1871, and

published under authority of said city, embracing Articles 43, 44, 45, 46 of the General Ordinances. Article 43 is as follows:

"Art. 43. Every keeper of a bawdy-house within this city shall pay an annual license tax to the city of $200 for the privilege of keeping the same,".etc.

"Art. 44. A bawdy-house is a house kept for the purposes of prostitution, and is visited by the public for such purposes."

The defendant read in evidence two licenses granted by the recorder of Waco to the defendant, the first dated March 27, 1876, authorizing and empowering her to keep a bawdy-house in the city of Waco for one year from that date; and the second dated December 27, 1875, to keep a bawdy-house in the city of Waco for three months.

The defendant next read in evidence Article 233 of the General Ordinances of Waco, as follows:

"Art. 233. No license shall be sold or otherwise transferred, and the city council may at any time revoke any license issued under any ordinance, on repayment of any amount which may have been paid by the holder of said license, after deducting the amount due on the time expired."

The prosecution read in evidence an ordinance of the city of Waco, approved April 6, 1876, repealing all ordinances granting licenses to any one to keep a bawdy-house. The defendant read an ordinance of the city of Waco, passed October 5, 1876, to regulate and license bawdy-houses in the city.

The lower court, in the latter part of the 3d instruction to the jury, in regard to the licenses issued by the corporate authorities of the city of Waco to keep a bawdy-house, charged the jury as follows: " That the license, as a defense against the charge preferred against this defendant, is of no avail, the grant to the city to license being void from the beginning.

" 4th. If the jury believe that the defendant kept a dis-orderly house as charged, it would be their duty to return a verdict of guilty, and fix the punishment at not less than $100 nor more than $500."

The defendant's counsel excepted to the charge of the court, and also asked the following charge, which the court refused to give : " The defendant asks the court to charge the jury that if the jury believe from the evidence that the charter of the city of Waco authorized the corporate authorities of said city to license bawdy-houses, and that in pursuance of that power an ordinance was passed by said corporate authorities authorizing the licensing of such houses, and that under the provisions of such ordinance the defendant applied for, and took out, such license or licenses for the term of one year from March 27, 1876, previous thereto, and that the act of keeping such bawdy-house, as is charged in the indictment, occurred after taking out such licenses and before their expiration, then they are instructed that such license presents in law a complete defense to this prosecution, no matter whether the ordinance aforesaid was repealed immediately after their issuance or not."

The first and main question for us to decide in this case is : Does the special act of April 26, 1871 (Special Laws First Session Twelfth Legislature, ch. 113, sec. 7) control the general law of August 26, 1856 (Penal Code, Art. 396 [Pasc. Dig., Art. 2027] ), upon the subject of bawdy-houses within the corporate limits of Waco?

The charter or special act of April 26, 1871, is the junior of the Criminal Code by fourteen years, and in cases of conflict the junior law (as a general rule of construction) must prevail. Dwar. on Stat. 156 ; Sedgw. on Stat. & Const. Law, 100 ; *Harrington* v. *Trustees, etc.*, 10 Wend. 550 ; *Bowen* v. *Lease*, 5 Hill, 225 ; *Williams* v. *Potter*, 2 Barb. 316 ; *Van Rensaeler* v. *Snyder*, 9 Barb. 302 ; *Johnson* v. *Bird*, 1 Hempst. 434 ; *Maddox* v. *Graham*, 2 Met.

(Ky.) 56. It does not change the rule, although the former is a general and the latter statute is a special charter. *Tierney* v. *Dodge*, 9 Minn. 166 ; *Wood* v. *Wellington*, 30 N. Y. 218 ; *The State* v. *Jones*, 18 Texas, 879 ; *Burke* v. *Jeffries*, 20 Iowa, 145.

Judge Cooley says : " Municipal by-laws must be in harmony with the general laws of the state, and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-law must give way. The charter, however, may expressly or by necessary implication exclude the general laws of the state on any subject, and allow the corporation to pass local laws at discretion, which may differ from the rule in force elsewhere." Cooley's Const. Lim., 3d ed., 198 ; *Goddard, petitioner*, 16 Pick. 504 ; *Com.* v. *Patch*, 97 Mass. 222 ; *St. Louis* v. *Webber*, 44 Mo. 547. Judge Dillon, in his work on Municipal Corporations, announces the same principle, and goes further — says that " statutes of a general nature do not repeal by implication charters and special acts passed for the benefit of particular municipalities." See 1 Dill. on Mun. Corp., 2d ed., sec. 54 ; see, also, the authorities referred to in his notes under the section quoted.

It is no legal objection to the charter of the city of Waco that it authorized the city authorities of Waco to license bawdy-houses in Waco, when there was an express provision of the Code making it a misdemeanor to keep such houses in all other parts of the state. There was no constitutional provision, when the special act was passed, which prevented the passage of such an act.

Mr. Cooley says : " Laws public in their objects may, unless constitutional provisions forbid, be either general or local in their applications ; they may embrace many subjects, or one ; and they may extend to all citizens, or be confined to particular classes, as minors or married women, bankers, traders, and the like. The authority that legis-

lates for the state at large must determine whether
particular rules shall extend to the whole state, and all its
citizens, or, on the other hand, to a subdivision of a state,
or a single class of its citizens, only." Cooley's Const. Lim.
390. This doctrine is fully recognized in the case of *Orr* v.
*Rhine*, decided by our supreme court of Texas, 45 Texas,
345.

To make a statute a public law of general obligation, it is
not necessary that it should be equally applicable to all
parts of the state; all that is required is that it shall apply
equally to all persons within the territorial limits described
in the act. *The State* v. *County Comm. of Baltimore*, 29
Md. 516.

The cases relating to municipal corporations stand upon
peculiar grounds, from the fact that those corporations are
agencies of the government, and, as such, are subject to com-
plete legislative control. The case of *The State* v. *Clark*,
54 Mo., republished in 14 Am. Law Rep. 471, is a case in
point. The facts of that case are very similar to the facts
in the case at bar, with the difference, if any, that the
charter of St. Louis authorized the city authorities to
*regulate* bawdy-houses, while the charter of Waco authorized
the city authorities to *license* them. The supreme court of
Missouri held that, under the power given to the city council
of St. Louis, under the municipal charter, "to regulate
bawdy-houses," a city ordinance licensing them is valid,
notwithstanding the general inhibition of the statute; and
that a license taken out in conformity with the ordinances,
by any one, will shield him or her from criminal proceed-
ings by the state; that such ordinance is not void as against
public policy or good morals. The following is copied from
that opinion:

"It is said that this ordinance is subversive of the com-
mon law, contrary to the general law of the state, against
public policy, and of an immoral tendency, etc. The legis-

lature has a right to change the common law; it has a right to allow the legislative authorities of St. Louis to regulate the subject now under consideration differently from what it is in other portions of the state. It is a naked assumption to say that any matter allowed by the legislature is against public policy. The best indication of public policy is to be found in the enactments of our legislature. To say that such a law is of immoral tendency is disrespectful to the legislature, who no doubt designed to promote morality," etc. "With the expediency, or propriety, or wisdom of a legislative enactment we have nothing to do. If a constitutional right is infringed, the courts are open to afford redress."

Arguments on the subject of the morality of the law should be addressed to the legislature or the city council of Waco. The people originally possessed all legislative power. They have intrusted this power generally to the several state legislatures, saving only such restrictions as are imposed by the Constitution of the United States or that of the particular state in question. Denio, C. J., says: "The people, in framing the Constitution, committed to the legislature the whole law-making power of the state which they did not expressly or impliedly withhold." *People* v. *Draper*, 15 N. Y. 543.

There is only one other question, which we will consider briefly, in this case, and that is as to the effect of a repeal of the ordinance on April 6, 1876, after the defendant had taken out a license for one year. We are inclined to think that a mere repeal of an ordinance or statute after issuance of a license does not affect its validity. As Article 233 of the General Ordinances of Waco was in force, as appears from the testimony, when the licenses read in evidence by defendant were issued, the defendant had notice that the city could at any time revoke any license issued under any ordinance, on repayment of any amount

which may have been paid by the holder of said license, after deducting the amount due on the time expired.

The city of Waco could have tendered defendant back the money paid for her license, less the amount due on the time expired, and formally have revoked her license; and, had this been done by the corporate authorities of the city of Waco, defendant would have been liable to punishment, under the general law, for longer following the occupation of keeping a house of public prostitution in the county of McLennan.

Because the lower court erred in its charge to the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*