THE CITY OF ST. LOUIS, *Plaintiff in Error*, v. RUSSELL.

Division Two, May 24, 1893.

1. **Municipality**: ST. LOUIS CITY CHARTER: LIVERY STABLE. The power conferred on the city of St. Louis by its charter to regulate livery and sale stables includes the right to limit them to certain localities and to provide for their cleanliness, so that they may not become injurious to health.

2. ———: ———: ———. The power of the city to determine the location of livery stables is a legislative one and it cannot be delegated to the owners of the property in a block in which it is intended to erect such structure.

3. ———: ———: ———. An ordinance of the city authorizing lot owners to determine whether a person shall be permitted to erect a livery stable in the block in which their property is located is invalid as permitting discrimination.

4. **Nuisance**: LIVERY STABLE. A livery stable is not *per se* a nuisance.

*Error to St. Louis Court of Criminal Correction.*—HON. R. A. CAMPBELL, Judge.

AFFIRMED.

*W. C Marshall* for plaintiff in error.

(1) The ordinance of the City of St. Louis in question is a valid one. *State ex rel v. Beattie*, 16 Mo. App. 131; Dillon on Municipal Corporations [4 Ed.], sec. 141. (2) The power conferred by the charter of St. Louis city to regulate livery stables includes the right to designate the places where they may be located and to prohibit their erection at other places, and the ordinance provisions in question are reasonable. See Dillon on Municipal Corporations, sec. 379.

*Louis A. Steber* for defendant in error.

(1) The ordinance is void for the reason that a public trust cannot be delegated or assigned at will. *Ruggles v. Collier*, 43 Mo. 353; *City v. Clemens*, 43 Mo. 395; *Thompson v. Boonville*, 61 Mo. 282; *Matthews v. Alexandria*, 68 Mo. 119; *Stewart v. Clinton*, 79 Mo. 610; Cooley on Constitutional Limitation [6 Ed.], pp. 137, 248, 249; *In re Quong Woo*, 13 Fed. Rep. 229; *Baltimore v. Radecke*, 49 Md. 217; *Yick Wo v. Hopkins*, 118 U. S. 356; *State ex rel v. Beattie*, 16 Mo. App. 144 (the dissenting opinion is the correct law as announced by all courts in this country); Dillon on Municipal Corporations [4 Ed.], secs. 96, 97, pp. 154, 156; *State Center v. Barenstein*, 66 Iowa 249; *City of Richmond v. Dudley*, 28 N. E. Rep. (Ind.) 312; *State v. Mahnor*, 9 South. Rep. (La.) 480. (2) If the legislative powers of the municipal assembly and mayor with reference to the livery and sale stables can also be transferred to the "owners of one-half of the ground of said block," it will create a petty legislative body in every city block of the city of St. Louis, with concurrent jurisdiction over this branch of municipal affairs. This, certainly, was not contemplated by the charter makers. *Ruggles v. Collier*, 43 Mo. 353; *State v. Street Commissioner*, 36 N. J. Law 283; *Tugman v. Chicago*, 78 Ill. 405; Cooley on Constitutional Limitation [6 Ed.], p. 137; *In re Quong Woo*, 13 Fed. Rep. 229. (3) Nor can the municipal assembly abdicate its legislative powers vested in it by the state. *Gale v. Kalamazoo*, 23 Mich. 344; 1 Tex. Ct. of App. p. 714, secs. 1243, 1244. (4) The use of one's property is as much property as the property itself. *Lackland v. Railroad*, 31 Mo. 180; *Thurston v. City of St. Joseph*, 51 Mo. 510 (517). There is a clear distinction between the erection of the building itself and the use to which that building may be put. *Flint v. Russell*,

5 Dill. 151; *Appeal of Czarniecki*, 11 Atl. Rep. (Pa.) 660; *Duncan v. Hays*, 22 N. J. Eq. 25; *Bridge Co. v. Paige*, 83 N. Y. 178. (6) The ordinance is unequal, unreasonable, oppressive, partial and is discriminating, *Ex parte Quong Woo*, 18 Fed Rep. 229; *Yick Wo v. Hopkins*, 118 U. S. 356; *Ex parte Sing Lee*, 31 Pac. Rep. (Cal) 245; *State v. Tennant*, 14 S. E. Rep. (N. C.) 387. (7) The ordinance is in violation of the fourteenth amendment to the constitution of the United States. *Ex parte Quong Woo*, 13 Fed. Rep. 229; *Yick Wo v. Hopkins*, 118 U. S. 356; *Ex parte Sing Lee*, 31 Pac. Rep. (Cal.) 245. (8) A condemnation of the use of property by a body known as "the owners of one-half the ground" in a city block, is not due process of law, which see defined Bouvier's Law Dictionary; *Bates v. District of Columbia*, 8 D. C. 443. (9) The municipal assembly itself could not deprive this defendant of the use of this property. *Bates v. District of Columbia, supra*; Wood on Nuisances [2 Ed.], sec. 744, pp. 822, 823; *Yates v. Milwaukee*, 77 U. S. (505) 497; *Yick Wo v. Hopkins*, 118 U. S. 356; *River Rendering Co. v. Behr*, 77 Mo. 91; *Underwood v. Green*, 42 N. Y. 140; *Baltimore v. Radecke*, 49 Md. 217; *Kosciusko v. Slomberg*, 68 Miss. 469. (10) Nor can even the legislature constitutionally declare a given use of a particular property as harmful and a nuisance. This would be exercising a judicial function. *Quintini v. Bay St. Louis*, 64 Miss. 483; Tiedeman on Police Powers, sec. 122a, p. 426; Wood on Nuisances [2 Ed.], sec. 744, pp. 822, 823. (11) A livery stable business is a legitimate industry which any man can follow as a matter of right, like any other legitimate business, trade or avocation, limited only by the rule of *sic utere tuo ut alienum non laedas. Flint v. Russell*, 5 Dill. 151; *St. Louis v. Schnuckelburg*, 7 Mo. App. 537.

BURGESS, J.—On the twenty-first day of July, 1890, the defendant was found guilty in the police court of St. Louis, and fined the sum of $200.00 for violation of section 733 of the ordinances of said city, to-wit:

"Section 733. Every person, who as owner, agent, lessee, builder, architect or contractor, shall commence any building in the city of St. Louis, or do or cause to be done any work on the same, or build the same without first having procured a permit authorizing the same from the commissioner of public buildings, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than one nor more than five hundred dollars for each offense, and every day upon which said work shall be done, or said building shall be commenced, or exist without said permit, shall constitute a separate offense."

He appealed to the court of criminal correction where he was again tried on the following agreed statement of facts:

"The plaintiff, the city of St. Louis, is a municipal corporation, organized under the laws of Missouri; defendant is the owner of a certain lot of ground in said city of St. Louis, fronting on the east side of Grand avenue between Lucky and North Market streets, and in city block number —. Defendant is now erecting a livery stable thereon without a permit, and that prior to commencing said building thereon applied to the commissioner of public buildings for a permit for the erection of a livery stable upon his said property; that said application was in writing and in proper form; that defendant also tendered in connection therewith suitable and satisfactory plans and specifications for said livery stable, and also tendered therewith the required fee for the issuance of the permit; that the building commissioner stood ready to issue said permit

and will yet issue said permit if defendant will comply with the provisions of sections 734 and 735 of the revised ordinance of the city of St. Louis, which read as follows:

'Section 734.    No livery, boarding or sale stables shall be located on any block of ground in St. Louis without the written consent of the owners of one-half the ground of said block.

'Section 735.    No permit shall hereafter be granted by the commissioner of public buildings for the erection of any livery, boarding or sale stables until the provision contained in the next preceding section is complied with, and the written consent aforesaid is filed in said office.'

"The question and issue submitted to the court for determination is the validity or invalidity of the two sections quoted; and on which judgment shall be had either for plaintiff or defendant as the court may find. The bound volume of Revised Ordinances, 1887, of the city of St. Louis may be considered in evidence without being set out herein or in any bill of exceptions hereafter presented by either party."

On the sixteenth of September, 1890, the court of criminal correction discharged the defendant.    After a motion for a new trial was filed and overruled the cause was brought to this court by plaintiff on a writ of error.

By section one of article three of the charter of the city of St. Louis, the legislative power of the city is vested in a council and house of delegates, to be styled the "Municipal Assembly of the City of St. Louis." And it is contended by counsel for plaintiff the further power is conferred on it by its charter to pass the ordinances now before this court for consideration.    By the fifth paragraph of section 26, of article 3, of its charter it is given the power to license, tax and regulate livery and sale stables; in paragraph six of the same

section it is given the power to declare, prevent and abate nuisances on public and private property; and by paragraph fourteen, of the same section, it is given the power to pass all such ordinances, not inconsistent with the provisions of the laws of the state, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures.

The first question for our consideration is whether or not the power to regulate livery and sale stables includes the right to designate the places, and in what part of the city they may be located, and to prohibit their erection at other places. A similar question was before this court in 1857, in the case of *St. Louis v. Jackson*, 25 Mo. 37, in which it was held that a clause in the charter of the city of St. Louis, giving the mayor and city council the power to "regulate the inspection of butter, lard, and other provisions; to regulate the vending of meat, poultry and vegetables; to restrain and punish the forestalling of poultry, butter, eggs, and fruit, and to suppress hucksters," confers upon them the power to provide by ordinance that "no person not being the lessee of a butcher's stall, shall sell or offer for sale in market, or in *any other place*, any fresh meat in less quantities than one quarter," is not in restraint of trade, but is both politic and proper. The court in its opinion says: "This ordinance is not against any known law of our state, nor does it interfere with the right of selling the commodities of our citizens; it requires that the person retailing fresh meat shall have a stall in some market for that purpose. The city undergoes heavy expense in erecting commodious and convenient market houses; it rents the stalls of those houses to butchers and others selling fresh meats; the rents are of importance by way of income to the city. Now to permit any one who may think

proper to put up a block or shantee on any street or alley or corner of any street or alley, for the purpose of selling fresh meats in quantity less than a quarter, and thereby withdraw the purchasers from the market houses, is at once giving to such retailers a very great advantage over those who rent the stalls and pay a high price for them.''

This decision was followed and approved in the case of *St. Louis v. Weber*, 44 Mo. 547, in construing a charter provision substantially the same as the one under consideration and it was held that the city of St. Louis, under its charter of March 3, 1851, authorizing the city council to ''establish markets and market places, and to regulate the vending of meat,'' had power to provide by ordinance that no person not being a lessee of a butcher's stall, should sell or offer for sale in market, or in other place, any fresh meat in less quantities than one quarter. *Ash v. People*, 11 Mich. 347; *Davenport v. Kelley*, 7 Iowa 102; *Bush v. Seabury*, 8 Johns. 418; *Buffalo v. Webster*, 10 Wend. 99.

So it was held in the case of *Cronin v. People*, 82 N. Y. 318, when by its charter the city of Albany by its common council were authorized to enact ordinances ''to regulate the erection, use and continuance of slaughter houses,'' that the common council had power to pass an ordinance prohibiting the slaughter of animals within certain specified portions of the city, and that such an ordinance is not void as being in restraint of trade. *Slaughter House Cases*, 16 Wall. 36, 62.

There are other courts of recognized authority which seem to have announced a different rule, for instance, Minnesota and Georgia. *St. Paul v. Laidler*, 2 Minn. 190, and *Bethun v. Hughes*, 28 Ga. 560. But the ruling of our own courts is sustained by the decided weight of authority, and as it seems to us, to best comport with reason and justice and the interest, health

and prosperity of the city.   *State ex rel. v. Beattie*, 16 Mo. App. 131.   We think that the city has the power under its charter and ordinances to regulate the place of building livery stables, and confine them to certain localities within the corporate limits, as well as to regulate the manner of their keeping as to cleanliness, that they may not be or become obnoxious and deleterious to the health of her citizens.

We come now to the consideration of the important question in this case, that is, the right of the city by ordinance to delegate to the owners of one-half of the ground in any block in which a livery, boarding or sale stable is proposed to be erected to say whether it shall be done or not, and requiring any person desiring to construct such stable, before a building permit will be granted him by the city for its erection, to obtain in writing the consent of the owners of one-half of the ground in such block. . It is contended by counsel for defendant that this is a delegation of the legislative power conferred on the city by article three, section one, of its charter, and the ordinance is therefore null and void.   Ministerial powers may be delegated by a city, but legislative powers cannot.   Legislative power implies judgment and discretion on the part of those who exercise it, and a special confidence and trust on the part of those who confer it.   *Ruggles v. Collier*, 43 Mo. 353.

In the case of *St. Louis to use v. Clemens*, 43 Mo. 395, under an act entitled "An act to revise the city charter of the city of St. Louis," giving the city council power to construct district sewers, which provides that "such sewers shall be of such dimensions as may be prescribed by ordinance," it was held that an ordinance providing that a sewer therein authorized to be constructed on the premises of appellant should be of such dimensions and of such materials as may be

deemed requisite by the engineer, was not in legal conformity with the provisions of the charter, and should be disregarded. That a city council could not delegate a duty plainly and expressly devolved upon them to the mere discretion and caprice of a simple individual. *Thompson v. Boonville*, 61 Mo. 282; *Matthews v. Alexandria*, 68 Mo. 115.

So it was held in the case of *In re Quong Woo*, 13 Fed. Rep. 229, that a city ordinance which makes it unlawful for any person to establish, maintain, or carry on a laundry within certain limits in the city of San Francisco without having first obtained the consent of the board of supervisors, which could only be granted upon a recommendation of not less than twelve citizens and tax-payers in the block in which the laundry is proposed to be established and which punished by fine and imprisonment for a violation of its provisions, is invalid. That under their authority to license trades and callings, supervisors cannot delegate their power to others, or make its exercise depend upon the consent of others.

In *Barthet v. New Orleans*, 24 Fed. Rep. 564, an ordinance was held invalid which made it unlawful to maintain a slaughter house "except permission be granted by the council of the city of New Orleans."

So in *State v. Mahner*, 9 South. Rep. (La.) 480, an ordinance of the city of New Orleans forbidding the keeping of dairies within certain limits, except by the permission of the city council, was held to be null and void.

In *Newton v. Belger*, 143 Mass. 598, an ordinance which permitted the board of aldermen to exercise a discretion in granting or refusing a permit for the erection of buildings within a fire district was held invalid.

In the case of *Richmond v. Dudley*, 28 N. E. Rep. 312, it was held that an ordinance prohibiting the storage by any person within the city limits of inflammatory oils except upon permission from the common council, leaving it to the common council to say whether a particular place is suitable for the purpose, or a particular person is a proper one to whom to grant permission, and allowing the permission to be revoked at the will of the council was held invalid. *State v. Dubarry*, 11 South. Rep. (La.) 718.

So it was held in the case of *State v. Tenant*, 14 S. E. Rep. 387, by the supreme court of North Carolina, that an ordinance which provides that no person shall erect, add to or generally change any building without first obtaining the permission of the board of aldermen, is void in prohibiting the erection of buildings, irrespective of the materials to be used, and also in reserving to the board the arbitrary power to refuse the application of one person and grant that of another. Cooley on Constitutional Limitations [6 Ed.] p. 137.

These authorities abundantly show beyond question that the ordinance under consideration is void because of the delegation of legislative power to the mayor and municipal assembly of the city of St. Louis to the owners of one-half the ground in the block where the livery stable was builded.

We are also of the opinion that the ordinance is invalid for the reason that by its provisions one citizen is permitted to erect a livery stable in a certain locality by obtaining the written consent of the owners of one-half the ground in the block, while another of like merit would not be permitted to do so for the want of such consent. It would enable one person to construct and operate a livery stable upon one side of the street

by getting the written consent of the owners of one-half the ground in the block, while another would be denied the privilege of erecting a similar building in the opposite block across the street, or in adjoining block, because of his inability to obtain such consent. Not only this, if one person is fortunate enough to be the owner of one-half the ground in a block he can erect his stable with impunity, while his neighbor or other person not so fortunate could not do so, the direct tendency of which would be to create a monopoly. The effect would be discriminating in favor of certain persons, and against others entitled to equal rights before the law. This court has on different occasions held ordinances less obnoxious, unreasonable and invalid. *Cape Girardeau v. Riley*, 72 Mo. 220; *St. Louis v. Weber, supra; Corrigan v. Gage*, 68 Mo. 541.

As was said by the supreme court of Illinois in the case of *Tugman v. Chicago*, 78 Ill. 409, "If one of the citizens of Chicago is permitted to engage in the business of slaughtering animals in a certain locality, an ordinance which would prevent, under a penalty, another from engaging in the same business, would not only be unreasonable, and for that reason void, but its direct tendency would be to create a monopoly, which the law will not tolerate."

The keeping of a livery stable is not a business which of itself is unlawful, but like many other trades and occupations which are carried on in large cities almost indispensable, and if it must be left to the will and caprice of those who own more than one-half the ground in every block to decide as to whether or not it shall be engaged in, it might possibly be entirely prohibited within the city limits.

The opinion of the majority of the court of appeals in the case of the *State ex rel. v. Beattie*, 16

Mo. App. 131, is contrary, we think, to the great weight of authority on the question of the validity of this ordinance and is disapproved. The ordinance is clearly void, and without legal force and effect.

The ordinance cannot be upheld on the ground that a livery stable is a *nuisance per se*, for the law is well settled otherwise. ˋ*Aldrich v. Howard*, 7 R. I. 87; *Burditt v. Swenson*, 17 Tex. 489; *Dargan v. Waddill*, 9 Ired. L. 244; *Kirkman v. Handy*, 11 Humph. 406; *Coker v. Birge*, 10 Ga. 336; *Harrison v. Brooks*, 20 Ga. 537; *Ball v. Ray*, L. R. 8 Ch. App. Cas. 467; *Broder v. Saillard*, 2 Ch. Div. 692; *State ex rel. v. Beattie*, 16 Mo. App. *supra*. Yet it is equally well settled that a livery stable may become so, if so kept as to destroy the comfort of owners and occupants of adjacent premises, and so as to impair the value of their property. 13 American and English Encyclopedia of Law, p. 935; *Burditt v. Swenson*, 17 Tex. *supra; Dargan v. Waddill*, 9 Ired. L. 244; *Church v. Arrington*, 36 Ala. 548; *Coker v. Birge*, 9 Ga. 425; *Kirkman v. Handy, supra*. This, however, depends upon the manner of its keeping, and as to cleanliness, noxious fumes, flies, etc., and the effect thereof on adjoining property. We are of the opinion that the judgment should be affirmed, and it is so ordered. All concur.